ANDREWS & SMITH v. BURDICK & GOBLE ET AL.

1. **Mechanics' Lien :** OF SUB-CONTRACTOR: AVOIDANCE OF BY PAYMENT TO PRINCIPAL CONTRACTOR. Where a sub-contractor furnishes to the principal contractor materials for a house, and duly files his claim for a mechanics' lien, and gives notice thereof to the owner within thirty days after the last of the materials are furnished, but, at the time of the service of the notice, the owner has paid the principal contractor in full, pursuant to the terms of his contract, the lien will be enforced, provided the owner had *actual* notice of the facts out of which grew the sub-contractor's claim. In the absence of any such notice, payment in good faith to the principal contractor, pursuant to the terms of the contract, will defeat the lien. See *Stewart v. Wright*, 52 Iowa, 335, and *Winter v. Hudson*, 54 Id., 336.

2. ———: ———: PAYMENT TO CONTRACTOR WHERE WORK IS DEFERRED. Where a contractor agrees to finish a house by a stated time, at which he is to receive his final payment, and the work is not then finished, but, with the consent of the owner, it is finished at a later day, the last payment is not due until the work is actually finished; and, in the absence of any other contract, compensation for extra work is not due till the work is finished; and it would *seem* that payment in such a case, before the actual completion of the work, would not be good as against a sub-contractor otherwise entitled to a lien.

3. ———: ———: HOW AFFECTED BY ALTERATION OF PRINCIPAL CONTRACT. Where a builder's contract is changed in a material point, without authority, after its execution, but a sub-contractor is not prejudiced in any way by such alteration, his right to a mechanics' lien will not be enlarged on account thereof

4. **Appeal to Supreme Court :** CHANCERY CASES INVOLVING LESS THAN $100: CONSTITUTIONALITY OF STATUTE. Section 3173 of the Code, restricting appeals to the supreme court, and providing for the certification of questions of law in actions involving less than $100, is not, when applied to chancery cases, repugnant to Sec. 4, Art. 5, of the Constitution, which defines the jurisdiction of the supreme court; and such cases are not triable *de novo* in this court, ADAMS, J., *dissenting*.

5. ———: LESS THAN $100: ACTION INVOLVING INTEREST IN REAL PROPERTY: WHAT IS NOT. An action brought to enforce a mechanics' lien is not "a cause in which is involved any interest in real property," as contemplated by Sec. 3173 of the Code, limiting appeals to the supreme court to cases where more than $100 are involved.

6. **Practice in Supreme Court :** FAILURE TO ASSIGN ERRORS: OBJECTION WAIVED. Where apepellant fails to assign errors, the appellee, if he desires to take advantage of this failure, must do so at the proper

time, and when, as in this case, he does not raise the objection until after the argument of the cause upon its merits, he will be deemed to have waived his right to object.

*Appeal from Palo Alto District Court.*

Friday, June 15, 1883.

ACTION in chancery to enforce a mechanics' lien in favor of a sub-contractor. Judgment was entered against the contractors, but the petition was dismissed as to the owners of the property, the court holding that plaintiffs are not entitled to a lien. Plaintiffs appeal.

*T. W. Harrison* and *Geo. B. McCarty*, for appellants.

*Soper & Crawford*, for appellees.

BECK, J.—I. Plaintiffs furnished materials to Burdick & Goble, builders, who were erecting a storehouse for Potter & Skevington, under a contract with him. By the terms of the contract, payments were to be made in nearly equal parts upon the execution of the contract, and the completion of the building, and its acceptance by Potter & Skevington. It was to be completed between the 15th and 20th of June. It was not finished until the 3d of July. On the 5th day of June, plaintiffs furnished the materials to recover for which this suit is brought. On the morning of the 3d of July, plaintiffs filed in the clerk's office a statement and claim for a lien, and in the evening of that day caused the notice to be served upon Potter & Skevington required by the statute. There was evidence showing that they had knowledge of the fact that the sub-contractors had furnished the materials. But on the 3d day of July, after plaintiffs' claim for a lien was filed, and before the written notice prescribed by the statute was served, they paid the contractors in full the amount due them for the building. Extra work, amounting to $75, was done, and paid for at the final settlement. Extra work was contemplated in the contract.

A motion for a new trial was made by plaintiffs, on the

ground that there had been a material alteration of the contract for the building, which was unknown to the plaintiffs before the trial, purporting to bind the contractors to furnish all materials, no such provision being in the original writing. The motion was overruled. The amount in controversy being less than $100, the district court certified certain questions of law to this court, whereof the following is a copy, *verbatim et literatim.* The points raised by the questions will be understood by attention to the facts of the case above stated.

"1st. Under a written contract for the completion of a building by the 15th to 20th of June, 1880, and the payment therefor to be made upon the completion. of the building, which, in fact, was not completed until July 3d, 1880, would a sub-contractor, who furnished materials on the 5th day of June, 1880, and filed a mechanics' lien therefor in the clerk of courts' office on the 3d day of July, 1880, before payment was made by the owner to the contractor, and, after said lien was filed, and on the same day, but before written notice therefor was served by the sub-contractor upon the owner, but with verbal notice of the plaintffs' lien, the owner paid the contractor in full, and afterwards, on the same day, written notice was served of the filing of said lien by the sub-contractor upon the owner, can the sub-contractor enforce that lien against the building?

"2d. Where a written contract provides that the building is to be completed by the 15th to the 20th of June, and that complete payment is then to be made, but the building is not, in fact, completed until thirteen days thereafter, and the owner acquiesces in such delay, is this such a change in the contract as will entitle a sub-contractor to 30 days after furnishing material in which to file his claim for a lien, and serve written notice thereof on the owner, and will the owner be liable to such sub-contractor, although the building may have been completed and the contractor paid in full therefor prior to the expiration of such 30 days?

3d. Where a contract for the building of a store-room pro-

vided that the contractor should furnish such extras as should be ordered by letter, and extras were, in fact, furnished by them, but it is not shown whether they were ordered by letter or otherwise, and when the contract provides for payment of the contract price upon the completion of the building, but is silent as to the date of payment for the extras that may be furnished, can a sub-contractor who furnished material and filed his claim for a lien, and gave written notice thereof within 30 days, establish a lien against the building for the materials furnished by him, or to the extent of the extras furnished by the contractors, if the building was finished and accepted by the owner within 30 days, and payment in full made therefor to the contractors within the 30 days?

"4th. Where there was a written contract for the erection of a building, would an unauthorized material alteration in the terms of said contract, after it was executed and delivered, entitle a sub-contractor, who furnished material for said building, to 30 days after the materials were furnished in which to file his lien and serve written notice thereof? Would such alteration of the written contract invalidate it, so that the sub-contractor would have thirty days after furnishing materials in which to file his lien and serve his notice, regardless of the terms of said written contract?

"5th. Where a written contract has been materially altered without authority, after execution and delivery, would the parties therein be permitted to show and rely upon the oral agreement upon which the written agreement was drawn, or will the parties be required to rely and recover, if at all, upon an implied compact to pay when the building was completed, and in such case would the sub-contractor have thirty days after furnishing material in which to file his lien and serve written notice thereof?"

II. The first question presents, briefly stated, the case of

1. MECHANICS' lien : of sub-contractor : avoidance of by payment to principal contractor.
payment by the owner of the building to the contractor before the expiration of thirty days after the materials were furnished by the sub-contractor, and before service of the written notice, required

by the statute, of the filing of the claim and statement for a lien by the sub-contractor, with knowledge that the sub-contaractor had furnished the materials.

III. The statute secures to a sub-contractor a lien for materials or labor. Chap. 100, Acts Sixteenth General Assembly, § 7 (Miller's Code, § 2134; McClain's Statutes, p. 599) provides that, "to preserve his lien as against the owner, and to prevent payment by the latter to the principal contractors or to intermediate sub-contractors, but for no other purpose, the sub-contractor must, within the thirty days, as provided in section six, serve upon such owner, his agent or trustee, a written notice of the filing of said claim." The notice referred to, which is provided for by section six, must be given within thirty days after the date upon which the last of the materials was furnished.

THE SAME.

It will be observed that the lien of the sub-contractor may exist for thirty days without the written notice. If such written notice be not given within that time, the lien ceases. The provision is explicit, and no exception is found in the statute which will discharge the lien within the thirty days. But this court, liberally construing the statute, so as to protect the owner who in good faith paid the contractor in accord with the agreement between them, held that such payment, made without knowledge on the part of the contractor of the claim of the sub-contractor, would defeat the lien of the latter. *Stewart & Hayden v. Wright,* 52 Iowa, 335. The decision is based upon the right of the parties to the contract to make payment as provided therein, and the doctrine that the sub-contractor must take notice of the contract between the owner and contractor, and that his rights are subordinate thereto. The want of knowledge by the owner of the claim of the sub-contractor is explicitly stated and recognized as a controlling element in the case.

In harmony with the foregoing case, *Winter & Co. v. Hudson,* 54 Iowa, 336, holds that payment by the owner, in accord with the terms of his contract with the contractor, with

knowledge of the claim of the sub-contractor, will not defeat the lien of the latter. These cases are in point, and, following them, we answer the first question certified by the court below by saying that, upon the facts which it presents, the sub-contractor is entitled to the lien which he seeks in this action to enforce.

The fact stated in the first question, that the building was not completed within the time prescribed in the contract, cannot change the result, when payment is made with knowledge by the owner of the sub-contractor's claim.

IV. The real point presented in the second and third questions, it seems to us, is this: Upon the facts stated, was 2. —— : ——: the time of payment under the contract changed, so that the payment made on the 3d day of July was before the money unpaid upon the building, and the price of the extras, was due?—the inquiry appearing to be, whether the time of completion and acceptance of the building, as fixed by the contract, was the time of payment for the building and extras. We think the delay in the work, with the acquiescence of the owner, delayed the time of payment until the work was done and accepted. And, as no time was fixed for payment for the extras, the price thereof became due when the building was completed and accepted.

*payment to contractor where work is deferred.*

But we fail to perceive the importance of the question in connection with the facts of the case. The claim and statement of the sub-contractors were filed, and written notice required by the statute was given, within thirty days after the materials were furnished. The payment was made after the filing, but before the written notice, and upon the completion and acceptance of the building, when, in any view, the money must have been due. It follows that, if the owners had no knowledge of the sub-contractors' claim, the payment defeats their lien. If they had such knowledge, the lien may be enforced.

V. The 4th and 5th questions do not present the case of an alteration of an instrument which would affect its validity.

3. ——: ——; A material, unauthorized alteration of an instru-
*how affected by alteration of principal contract.* ment, without more, will not in all cases wholly invalidate it. If the alteration be material and unauthorized, yet made by a stranger, without an evil purpose, through mistake, or the like, and it may be with certainty restored to its original condition, it will not be invalid as between the original parties, and, surely, will not be when the interest of a stranger is brought in question under it. We cannot, therefore, in reply to the question, say that the contract was affected by the alterations recited in the questions.

Upon referring to the facts of the case as disclosed by the abstract, which we are not required to do in answering the questions, it will be found that the alteration figuring in the case was the addition of words in pencil, and it is not shown by whom it was made. The evidence of one of the parties to the contract, who would be affected by the alteration, shows that it accords precisely with the contract the parties made, and that they performed the contract as it reads, with the alterations, and acknowledged that they considered themselves bound so to perform it. No objection on the ground of the alterations seems to have been raised by the parties to the contract at any time, or in any form. Surely, in a chancery case, where no prejudice results or can result to any one from an alteration of the character just described, which is brought in question by one not a party to the instrument, the alteration cannot be regarded as a thing affecting prejudically the rights of parties or strangers to the instrument.

VI. The plaintiffs claim that the case is not to be decided upon the questions certified by the judge of the district court, *4. APPEAL to supreme court: chancery cases involving less than $100: constitutionality of statute.* but must be tried *de novo*, insisting that the provisions of Code, § 3173, limiting appeals to cases where more than $100 are involved, unless certified to this court, cannot be construed to apply to chancery cases, without giving it an effect which would be in conflict with section 4, article 5, of the constitution,

which bestows upon this court appellate jurisdiction in cases in chancery, and constitutes it a court for the correction of errors at law. The point made by counsel is that the statute, if applied to suits in chancery, would give this court jurisdiction to correct errors in chancery cases, as in actions at law.

It cannot be doubted that, under this constitutional provision, it is competent for the legislature to regulate appeals in chancery, and impose restrictions thereon in cases not involving an amount specified.

Such regulations and restrictions may be applied to law cases. There can be no reasons given why chancery suits may not be subject to the like provisions. Appeals, then, in chancery cases may be restricted as in Code, § 3173; that is, the legislature may provide that cases which involve amounts less than $100 shall not be brought to this court for trial *de novo*. And there is no constitutional provision prohibiting the legislature to provide for the trial of chancery cases in this court upon questions of law certified by the court below. The statute under consideration is, therefore, not unconstitutional, when applied to chancery actions. Nor is it inconsistent with Code, § 2742, which provides generally for the trial *de novo* of chancery cases on appeal, being a limitation and restriction upon that section, excluding from its provisions cases involving less than $100. In this view, both sections stand.

VII. The restrictions of Code, § 3173, do not extend to "any cause in which is involved any *interest in real property*." This action is to enforce a mechanics' lien. Is an interest in real estate involved therein? The right of plaintiff to the lien and to its enforcement is involved in the action. Is this right an "interest in real estate." It is not a *jus ad rem*, or a *jus in re*, a right to the property in question, but is a right to a remedy against the property, whereby the real estate is subjected, by the specific lien, to the payment of plaintiffs' claim. See 1

*5. ——: less than $100: interest in real property.*

Story's Eq., § 506; *Conard v. Atlantic Ins. Co.*, 1 Pet., 386 (443); *Meany v. Head*, 1 Mason, 319.

An interest in real estate is something more than a right to a remedy against it. The word interest, as used in the section of the Code just cited, means share, portion, part. See Webster's Dictionary. When applied to land, it means the estate, right or title held in or to it. See Bouvier's Dictionary; Coke on Lit., 245–6. A lien, special or general, is not, therefore, an interest in lands. An action to enforce it is not within the exception to the limitations upon appeals found in Code, § 3173.

VIII. The abstract before us fails to present an assignment of errors. All the questions involved in the case have been argued by counsel of the respective parties; defendants' counsel presenting a printed argument, in which they discuss all points made by the other side. But at its close they make the objection that no assignment of errors was made by plaintiffs. The statute provides that, when errors are not assigned within the time prescribed, "the appellee may have the appeal dismissed, or the judgment or order affirmed, unless good cause for the failure be shown by affidavit." Code, § 3183.

*6. PRACTICE in supreme court: failure to assign errors: objection waived.*

This statute does not contemplate that the case shall be tried in the ordinary way, upon the merits, and the want of an assignment of errors be finally urged as a ground of disposition of the case, thus unnecessarily consuming the time of the court and imposing costs upon the other party. Like all other objections, this one may be waived by the silence and acquiescence of the parties. It ought to be regarded as waived in this case.

We are not to be understood as holding that the court may not require an assignment of errors, notwithstanding the waiver of the parties. The court may upon its own motion enforce the rule requiring the assignment, though waived by the parties.

The question we do not decide, whether an assignment of

errors is necessary in chancery cases wherein questions are certified under Code, § 3173.

We have considered all questions discussed by counsel, and reach the conclusion that the decree of the district court ought to be

REVERSED.

ADAMS, J., *dissenting.*—I think that, where an action in equity is tried below upon its merits, and is in such a condition that, upon appeal, a final decree could be entered in this court, the action is triable *de novo* in this court, if at all. Code, § 2742.