82 P.2d 641

**STATE v. APODACA.**

No. 4379.

Supreme Court of New Mexico.

Aug. 24, 1938.

Rehearing Denied Sept. 15, 1938.

Luis E. Armijo, of Las Vegas, for appellant.

Frank H. Patton, Atty. Gen., and Fred J. Federici, Asst. Atty. Gen., for the State.

BICKLEY, Justice.

The appellant was convicted of the crime of statutory rape. At the close of the state's case and at the close of the case, appellant moved for an instructed verdict, which motions were overruled. Afterwards a motion for a new trial was made, which was also denied. The case is here on appeal.

The first question raised by the motion for a new trial is that there was no legal evidence showing that the prosecuting witness was under the age of sixteen years.

The prosecuting witness testified on direct examination as follows:

"Q. How old are you? A. Fifteen.

"Q. When were you fifteen? A. I don't know when."

On cross-examination she testified as follows:

"Q. Fedelina, you say you don't know when you were fifteen? A. No.

"Q. You don't know whether you are sixteen or seventeen right now do you? A. I believe I am sixteen.

"Q. Do you know when you became sixteen? A. No.

"Q. Do you know whether you became sixteen last October? A. No.

"Q. Do you know whether you became sixteen on the 1st. day of December, 1936? A. No.

"Q. Do you know whether you became 16 on the 3rd day of December, 1936? A. No.

"Q. Or whether you became sixteen on the 10th day of December, 1936? A. No."

There is nothing further on the question of age except the mother's testimony. She testified on direct examination that Fedelina was 15 years old, after which statement the District Attorney asked the witness to produce a book which was marked for identification. In the process of questioning for the purpose of establishing the identity of the exhibit and laying the foundation for its introduction in evidence, the witness testified that she got the book from "the Priest of this church" and that the name in the book "Maria Fedelina" referred to her daughter Maria Fedelina Gomez; that the entry showing the date of the birth was made by "the Father" but she did not know which Father; that the entry was not made in her presence but that the book was returned to her "at the time." She then testified on direct examination:

"Q. When was this entry given to you? A. On the 21st day of July, when she was baptized.

"Q. Now, when was your daughter, Fedelina, born? A. I was mistaken, she was born on the 21st day of July.

"Q. Of what year? A. 1921."

After this testimony appellant objected to the admission of the book as evidence on the grounds that no proper foundation was laid, it was secondary evidence and not a family Bible. The District Attorney contended the book was a record given by the church and was the same kind of record as a family Bible and had the same effect as a Bible. The court overruled appellant's objections and allowed the introduction of the book.

On cross-examination the mother testified as follows:

"Q. All right. And the only reason a while ago, why you told this court and jury that your daughter Fedelina was born on July 21, 1921, was because it is so stated in this little book? What do you say, Yes or No? A. Yes, because that is the day when she was born.

"Q. And the only way you can tell she was born on July 21, 1921, is because it so says in this little book? A. Because that is how she was born, we told the Godfathers.

"Q. I'll repeat the question again. The only way by which you can tell Maria

Fedelina was born on July 21, 1921, is by reading in this book, answer Yes, or No? A. Yes.

\* \* \* \* \* \*

"Q. And if you did not refresh your recollection and refresh your memory from this little booklet, you wouldn't have known that Maria Fedelina was born July 21, 1921, if you hadn't read that in this little book? A. That's the reason why I had that little book.

"Q. But that doesn't answer my question, you say you have a bad memory, and I asked you whether or not it is a fact that if you had not read in this little book the entry that appears here showing that Maria Fedelina was born July 21, 1921, you wouldn't have known when she was born, would you? A. No, by memory, I wouldn't."

. A further scrutiny of the testimony would accentuate the unreliable character thereof on the issue of age. We have here a weak case as affecting the issue of age, even though we were not confronted with the illegal evidence admitted.

 The book containing the notation as to the birth of the prosecutrix was clearly inadmissible in evidence to prove her age. It does not conform to the requirements of Sec. 45-613, N.M.S.A.1929, so as to make it admissible as a church record. The mother testified that she had no memory of the dates contained in the memorandum; that the entry was made by "the Father" but she did not know which Father; that the entry

as to date of birth was not made in her presence or from information furnished by her, but that the priest made the entry from information furnished by the godfathers, who later delivered the book to her. Hence, it is not admissible as a memorandum made at the time when recollection was fresh and that when so made it spoke the truth. It is an essential at the basis of the use of all memoranda that they shall be shown to have been correct when made. See Territory v. Harwood, 15 N.M. 424, 110 P. 556, 29 L.R.A.,N.S., 504; also §§ 803 and 1276, Wharton's Crim. Ev., 11th Ed., Vol. 3. Nor is the book admissible under the general rules concerning admission in evidence of certificates of baptism, there having been no proper authentication. See Annotation in 36 A.L.R. 690; State v. Larocca, 157 La. 50, 101 So. 868, 36 A.L.R. 686; People v. Cassidy, 283 Ill. 398, 119 N.E. 279; and see Berry v. Hull, 1892, 6 N.M. 643, 30 P. 936, where we held that the certificate of the priest who baptized a person was inadmissible to show his age.

Hence, the decisive question is: Did the erroneous admission in evidence of the book constitute prejudicial error?

The record in the case at bar shows that the guilt of defendant rests solely on the question of the age of prosecutrix. If the state failed to show that prosecutrix was under sixteen years of age at the time the offense was committed, defendant should not have been found guilty. In other words, if the girl was five months and eight days older than the "little book" said she was, there was no crime committed.

The prosecutrix's testimony as to her age was confused. It was evident that she was not certain of her exact age. The mother's only statement before the book was introduced was that prosecutrix was 15 years old. This statement was followed immediately by introduction of the book, and there is nothing to show that her statement as to prosecutrix's age was independent of the knowledge she had gained from the book. When on cross-examination she testified that she had no memory whatever of the date of the birth except by consulting the book, the only statement she made which could possibly be said to be independent of the information gleaned from consulting the notation of the date of birth in the book, lost considerable of its force.

In 52 C.J. "Rape", 1095, appears the following: "* * * Where the prosecutrix testifies that she was a particular age, below the age of consent, which is not disputed, this proof of age, taken in connection with her appearance on the witness stand, is sufficient; however, the jury cannot sufficiently determine, from an inspection of the prosecutrix, merely whether she is under or over the statutory age. Where the evidence as to the female's age is indefinite, a conviction is unwarranted."

The Attorney General in his brief cites 52 C.J. 1074, to the effect that the jury may consider the appearance of the prosecutrix in determining her age. Where, however, in a case like the one here, the prosecutrix is within a few months of sixteen years old, it would be impossible for a jury by observing her appearance to make any conclusive finding that she is under or over sixteen.

It is apparent from the wide diversity of holdings on the question, that what constitutes prejudicial error in any one case rests entirely on the facts in that particular case. On the proposition generally, the court in Elmer v. State, 20 Ariz. 170, 178 P. 28, 2 A.L.R. 1519, has this to say (page 29):

"If improper and prejudicial testimony upon a vital point has been admitted as against the defendant, he is entitled to a reversal of the judgment of conviction, although upon the whole record his guilt may be apparent. * * *

"It is said, however, that, although it was error to permit the witnesses for the prosecution to testify to the complaints made by the young girl, such testimony was not prejudicial because other evidence in the case established the guilt of the defendant. We cannot agree with this contention. Conceding that the other evidence is very conclusive as establishing the guilt of the defendant, this will not justify a holding that illegal evidence upon the vital issue in the case was not prejudicial to the accused. * * *"

See also Snead v. Commonwealth, 138 Va. 787, 121 S.E. 82, 34 A.L.R. 550, where it is held: "The admission of incompetent evidence is reversible error, if it is more probable than otherwise that the jury were influenced by it in reaching their verdict."

In cases similar to the one here under consideration, the courts have been unanimous in holding that such erroneous admission of evidence was prejudicial.

State v. Larocca, 156 La. 567, 100 So. 720, is more nearly on all-fours with the case at bar than any we have been able to find. In that case whether prosecutrix was under eighteen years of age was the sole issue; the mother did not know the date of prosecutrix's birth from her own recollection independent of information gleaned from a baptismal certificate; and the margin of time was very small. The court there held: "In prosecution for carnal knowledge of unmarried female under age of consent, held, that it was prejudicial error to permit mother of prosecutrix to refresh her recollection as to the daughter's age by certificate of baptism and to identify paper as such certificate, when she testified she did not know when her daughter was born, though certificate was excluded from evidence." And in support of its holding said:

"Of course, this court has no jurisdiction of the facts in a criminal case; and if the issue to be decided was one of guilt or innocence on the weight of the evidence, we could not interfere, no matter what we might think of its value. But we are vested with power to determine the correctness of the ruling permitting the witness to refer to and use this document to strengthen or verify her own evidence. In doing this, we have the right to consider the nature of her testimony as disclosed by her direct and cross-examination, in arriving at a conclusion as to whether or not the evidence produced by the method of examining the witness with reference to the paper was or was not prejudicial to the interest of accused.

"The all-important question in this case, if and when the illicit relation had been established, was the age of the prosecutrix. If she was 18 years old at the time, accused was guilty of no crime; if less than that age, he was. The bill charges the offense to have been committed on November 26, 1923; according to one portion of her mother's testimony, she was born December 15, 1905, though in other places she says she does not know; and in no event was the margin of time more than 18 days. Hence it is seen how important and to what extent age was of the essence of the crime. Now, after the state had gotten the benefit of the certificate, by having the mother use it to refresh her memory in the presence of the jury and to identify it as a certificate of baptism, the refusal to permit its introduction in evidence could have been of little moment, because all had been accomplished indirectly, so far as the jury was concerned, that could have been desired by its reception as evidence. * * *"

The case was remanded and a new trial granted. Defendant was again tried and convicted and an appeal was taken. State v. Larocca, 157 La. 50, 101 So. 868, 36 A.L. R. 686. It appeared that at the second trial a priest, as a witness for the state, testified that he baptized the girl when she was a month old. He produced a record, which

he said he had made at the time of the baptism; stating the date of the baptism and the date of the birth. The priest testified that the only information he had as to the date of birth was given him by the mother, and on her statement alone he had made the notation as to date of birth. This testimony was allowed to go to the jury over the objection of defendant's attorney and the certificate was admitted in evidence also over objection. The Supreme Court of Louisiana held that neither the priest's testimony nor the certificate were admissible and that the court's ruling allowing them to go to the jury was prejudicial error, saying (page 869) : "It is contended by the judge, in his statement per curiam, that, even if there was error in his overruling the defendant's objection to the priest's testimony and to his certificate of baptism, the ruling was harmless, because the jurors saw the prosecutrix and had the opportunity to judge of her age. The judge says, 'The girl herself, at the request of counsel for defendant, was compelled to stand up, turn around, etc.,' and let the jury judge of her age. All of which is of no importance. When illegal evidence has been received on behalf of the state, in proof of a matter of importance in a criminal prosecution, the trial is illegal, no matter how much legal evidence was received. In such case, we cannot know whether a conviction is founded only upon the legal evidence or wholly or in part upon the illegal evidence. The verdict and sentence in this case must be annulled."

In People v. Mayne, 118 Cal. 516, 50 P. 654; 62 Am.St.Rep. 256, it was held: "On a trial for rape, the admission of a mother's entry in a Family Bible of the date of her child's birth was prejudicial error, though the mother had testified as to such date." The court said:

"It cannot be said that the error was harmless. The evidence was not cumulative, and was of an entirely different character from any other evidence in reference to the child's age; and the jury may well have given it a credit, by reason of its formality and apparent authenticity, which they would not grant to the living witness who testified respecting the age."

In Rowan v. State, 57 Tex.Cr.R. 625, 124 S.W. 668, 136 Am.St.Rep. 1005, the court held: "Where, in a prosecution for rape, the only issue was prosecutrix's age, the court's error in admitting a Bible entry made by prosecutrix's mother as to the date of prosecutrix's birth in corroboration of the mother's testimony, showing that the prosecutrix was under the age of consent at the time the offense was committed, was prejudicial." The court in this case quoted at length from People v. Mayne, supra, approving that holding, and said: "Believing, therefore, that the action of the court below in admitting this leaf of the family Bible was error, and that said error was hurtful to the appellant, and that the jury were probably influenced by this testimony, as strengthening the testimony of the mother as to the age of the child, in a case where the issue of age was sharply drawn as in this case, it was of such a harmful character as to require a reversal of the case."

In Haywood v. State, 61 Tex.Cr.R. 92, 134 S.W. 218, no issue was made of the fact of age of prosecutrix nor was any evidence introduced to show she was over 15. The court said (page 220): "The evidence clearly discloses that she was under that age. *Had there been an issue as to that question, the admission of the evidence complained of in the bill of exceptions would have been reversible.* It is not the admission of all illegal evidence which would demand a reversal for its admission. We are, therefore, of opinion that under the circumstances of this case, there being no issue on the question of the age of the prosecutrix, and although erroneously admitted, the introduction of it is not of sufficient importance to require a reversal. * * *" (Emphasis ours.) The court in the above case cited with approval Rowan v. State, supra.

We have in earlier decisions recognized the rule that it is not the admission of all illegal evidence which would demand a reversal for its admission.

In Territory v. Clark, 15 N.M. 35, 99 P. 697, we indicated that the problem the reviewing court is required to solve is whether the objecting party "was probably injured by its admission." (Page 699.)

It is common knowledge here that the records kept by the Catholic Clergy of dates of birth and baptism, marriages and deaths are held in high esteem for their probative force of involved facts where they are properly admitted in evidence. It is inescapable that this little book, which was claimed to be a transcript of a church record (although not so proven), bearing the sanction, as evidence, of the trial judge, may have been, and it seems probable that it was, the determinative factor with the jury in finding their verdict.

The Attorney General cites the rule as follows: "A rule which has been stated and applied many times by reviewing courts is that the admission of improper and objectionable evidence is harmless error where the fact involved is fully and clearly established by other evidence which is competent." 4 C.J. 975, § 2955.

Using the foregoing authorities as a guide to an evaluation of the situation in the case at bar, we are forced to the conclusion that the action of the trial judge in permitting the book containing the entry showing the birth of prosecutrix constituted prejudicial error. We surely are unable to say that "the fact involved is fully and clearly established by other evidence which is competent."

There are other reasons urged by appellant's counsel as grounds for reversal, but in view of our conclusion on the first point, a decision as to those is unnecessary.

In view of the foregoing, the verdict should be set aside and the cause remanded for a new trial, and it is so ordered.

HUDSPETH, C. J., and SADLER, BRICE, and ZINN, JJ., concur.

552

On Motion for Rehearing.

BICKLEY, Justice.

The State, by its Attorney General, has filed a motion for rehearing upon the sole ground that its suggestion in its answer brief calling our attention to the fact that appellant had failed to make any assignment of errors as required by paragraph 1 of Rule XII of our Rules was not expressly passed on in the opinion of the court.

Our decision on the merits of the case is not challenged; on the other hand, it is approved. It is urged, however, that it would be beneficial to the Bench and Bar to have an expression of the court as to what constitutes an assignment of error, whether a motion for new trial may be substituted therefor, whether the court will review errors appearing on the face of the record irrespective of assignments, whether the requirement of assignment of errors may be waived by the filing of an answer brief by the appellee without filing a motion to dismiss the appeal. We consider it inappropriate to enter into a discussion of these interesting questions except insofar as is necessary to dispose of the present motion. We have re-examined the record and the original briefs and we observe in appellee's brief that immediately after stating that it has no objection to appellant's statement of the case nor to his statement of the facts, the following appears:

"Answers to Points Relied upon for Reversal.

"Before stating our Answers to Points Relied upon by Appellant for Reversal, we call the court's attention to the fact that we are unable to find any assignment of errors either in the Praecipe (Tr. 73–74) or in Appellant's Brief in Chief as contemplated by paragraph 1 of Rule XII, Rules of the Supreme Court of New Mexico.

"Although Appellant lists four points in his brief, we believe that the third and fourth point substantially raise the same proposition and we shall therefore limit our answer to appellant's points to three rather than to four, as follows:"

It thus appears that appellant's points or contentions are intelligible. It is true that they were not entitled "Assignments of Error" but appellee was not misled. Earlier decisions indicate that if it is appellee's contention that no assignments of error have been made, the proper practice is to move to dismiss the appeal. Such a motion under our rules must be supported by separate briefs. See paragraph 2, Rule XVI, Supreme Court Rules. Furthermore, the suggestion of lack of assignments of error made in appellee's brief heretofore quoted was not further argued or presented. Had the able presentation now made by Mr. Federici, Assistant Attorney General, been incorporated in his answer brief on the merits, we would doubtless have expressly commented on the matter. We appraised the situation as a waiver of the failure to file or present formal assignments of error. We do not regard the omission to present

formal assignments of error as jurisdictional where an attempt has been made to present points relied upon for reversal. If assignments of error are assailed as being insufficient, it is within the discretion of the court to allow an amendment thereof "in the furtherance of justice and on terms." See Rule XII, Sec. 1. Sec. 4 of Rule XVI also lends support to this view. It is as follows: "No motion to dismiss an appeal or writ of error, strike a bill of exceptions or otherwise dispose of any cause except upon its merits, where such motion is based upon other than jurisdictional grounds, will be granted except upon a showing, satisfactory to the court, of prejudice to the moving party, or that the ends of justice require the granting thereof. No such motion will be entertained unless filed before the movant has filed his brief on the merits."

What we have just said would, of course, be without force if the presentation of the assignment of errors is jurisdictional. In 3 Am.Jur., Appeal & Error, § 695, after discussing the necessity for assignment of errors, it is said: "Under the liberal practice prevailing in some jurisdictions, plain errors not assigned may be reviewed."

See also 4 C.J.S., Appeal & Error, § 1239, where it is said: "It is often held, either because of express exception to that effect or because the court has discretion in the matter, that an appellate court will consider plain errors or fundamental errors apparent on the face of the record even though they have not been assigned."

The Attorney General cautions us that we have not reserved the power in our rules to consider plain or fundamental errors, and says that the basis of the holding of the United States Supreme Court in Columbia Heights Realty Co. v. Rundolph, 217 U.S. 574, 30 S.Ct. 581, 54 L.Ed. 877, 19 Ann.Cas. 854, to the effect that the court did not regard itself as under an absolute obligation to dismiss a writ of error or appeal because of the non-assignment of error where there appeared a plain error in the record, was the provision of a then existing rule of court as follows [page 583]: "When there is no assignment of errors, as required by § 997 of the Revised Statutes, counsel will not be heard, except at the request of the court; and errors not specified according to this rule will be disregarded; *but the court, at its option, may notice a plain error not assigned or specified*", and that our rules do not contain such a reservation. However, we said in State v. Garcia, 19 N.M. 414, 143 P. 1012, that the statutory rule requiring parties to take exceptions at the time a ruling is made and which prohibited the taking of exceptions in the Supreme Court to any proceedings in the district court, except such as shall have been expressly decided in that court, was a rule intended to be restrictive upon the rights of the parties, but that the Supreme Court possessed an inherent power to see that a man's fundamental rights are protected in any case, saying [page 1015]:

"* * * Where a man's fundamental rights have been violated, while he may be

precluded by the terms of the statute or the rules of appellate procedure from insisting in this court upon relief from the same, this court has the power, in its discretion, to relieve him and to see that injustice is not done.

"The restrictions of the statute apply to the parties, not to this court. This court, of course, will exercise this discretion very guardedly, and only where some fundamental right has been invaded, and never in aid of strictly legal, technical, or unsubstantial claims. * * *"

This case has often been followed, and there is no opinion in our reports which has received more general approval.

Since this reserved power exists in the court, however guardedly we may choose to exercise it, it would appear that the presentation of assignments of error is not jurisdictional and so there is afforded a field for the operation of Sec. 4 of Rule XVI, quoted supra. We are not to be understood as holding that the exercise of the reserved power is limited to such situations as existed in State v. Garcia, supra. See Gonzales v. Rivera, 37 N.M. 562, 25 P.2d 802.

As to the fundamental character of the error in the case at bar, we are confronted on the first page of appellant's brief with the assertion that the prosecuting witness in a statutory rape case was not shown to have been under the age of sixteen years at the time of the alleged offense. If that were true, then the crime charged was not committed.

It thus appears that the appellee, having filed its brief on the merits, without filing a motion to dismiss supported by separate briefs, is hardly in a position to urge the point now renewed.

Manifestly the appellee was not prejudiced in the case at bar by the defect complained of because its counsel was able to understand what appellant relied upon for reversal of the judgment. In Tharp v. City of Clovis, 33 N.M. 308, 265 P. 717, we declined to dismiss a case and affirm a judgment because of defectively stated assignments of error. We quoted with approval language of the Supreme Court of Minnesota, Calderwood v. Jos. Schlitz Brewing Co., 107 Minn. 465, 121 N.W. 221, replying to an attack on assignments of error as follows: "In view of the importance and public character of the questions involved, and of the tendency of current practice to consider the merits of an appeal, and not to dispose of it on mere technicalities, we feel constrained to overrule the defendant's objection."

That the case at bar is one of public character is apparent. That the tendency of current practice is to liberalize the procedure is undoubted and is manifested by our rules of appellate procedure in many instances. As was said in the Tharp Case, at one time just a little while ago we dispensed with assignments of error entirely. Again in State v. Vargas, 42 N.M. 1, 74 P. 2d 62, we went into a matter not adequately presented by an assignment of error on ac-

count of general interest in a question of law thought important to be settled.

For over eighty years from the time of the promulgation of the Kearny Code, September 22, 1846, until repealed by an Act of March 14, 1927, Ch. 93, L.1927, the law was that: "No assignment of error or joinder in error upon any appeal in any criminal case shall be required." Sec. 6 of the same Act amended Sec. 46, Ch. 43, L.1917, so as to read as follows: "The procedure on appeals and writs of error in criminal cases shall be governed by the procedure on appeals and writs of error in civil cases except as otherwise specified by law or rule of the Supreme Court." This statute was unchanged and was adopted as a rule of this court. See Rule V, Sec. 3.

It has been said that: " * * * After a statutory system or policy has been long established and is well defined, it will not be lightly presumed to be departed from or abandoned." Lewis' Sutherland, Statutory Construction, 2nd Ed. § 581. We may not rely upon the historical background further than to say that we would probably be warranted in giving our rule a liberal application in a criminal case so as not to turn an appellant out of court for failure to present proper assignments of error if by other means he has invoked our review of errors of the trial court, which if not corrected would deprive him of his life or liberty.

■ The Attorney General calls our attention to the decision of the Iowa Supreme Court in Andrews v. Burdick, 62 Iowa 714,

16 N.W. 275, holding that the requirement of an assignment of error may be waived, but stated [page 279]: "We are not to be understood as holding that the court may not require an assignment of errors, notwithstanding the waiver of the parties. The court may, upon its own motion, enforce the rule requiring the assignment, though waived by the parties." We approve this cautionary statement.

It is interesting to note that our Rules respecting assignment of errors as interpreted are in accord with the views expressed in the Report of the Committee on Simplification and Improvement of Appellate Practice made to the annual meeting this year of the American Bar Association, a portion of which is as follows:

"There is an additional reason for employing no assignment of error other than the statement of points in the brief when such a course is possible. Assignments of error are often treated by appellate courts as limitations upon the scope of the review, and no questions will be considered unless they are shown to be embraced within the formal assignments, even though they are plainly disclosed by the record, have been clearly raised by the appellant in his brief and argument, and the appellee has had full opportunity to answer them. *Technical hazards of this kind should not exist in a modern system of appellate procedure.*

"We recommend that assignments of error shall be required prior to making up the record on appeal only when the appellant proposes to omit some portions of the pro-

ceedings and record of the trial court, and that in other cases errors as well as cross-errors shall be assigned only in the briefs in the form of points relied upon for reversal. This is the method adopted by the new Federal Rules. We also recommend that assignments of error made otherwise than in the briefs *shall not constitute limitations upon the scope of review except so far as may be necessary to protect parties from actual prejudice."* (Emphasis ours.)

From all of the foregoing, we are constrained to deny the motion for rehearing, and it is so ordered.

·· HUDSPETH, C. J., and SADLER, BRICE, and ZINN, JJ., concur.