440 P.2d 792

STATE of New Mexico, Plaintiff-Appellee,

v.

Lloyd LaRoi MILLER, Defendant-Appellant.

No. 8359.

Supreme Court of New Mexico.

April 1, 1968.

Rehearing Denied May 27, 1968.

118

Willard F. Kitts, Albuquerque, for appellant.

Boston E. Witt, Atty. Gen., Donald W. Miller, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

COMPTON, Justice.

This is the second time this cause has been considered by this court. State v. Miller, 76 N.M. 62, 412 P.2d 240. On remand the defendant again was convicted by a jury of Bernalillo County of the crime of murder, its verdict specifying life imprisonment in lieu of death. Judgment was imposed accordingly, and the defendant has appealed.

At approximately midnight on July 4, 1962, Gloria Monson was found lying on the floor behind the counter of the package store at Johnny Farmer's Restaurant on East Central in Albuquerque, where she was employed, suffering from a bullet wound in her forehead. She died soon thereafter as a result of the gunshot wound. On the counter was a wine bottle on which was found a latent right thumb fingerprint. A fingerprint examiner employed by the Federal Bureau of Investigation in Washington, D. C., who testified that he had access to the F. B. I. fingerprint files brought with him the original of a print from the F. B. I. files, with a notation, "Miller, Lloyd L.," which was admitted into

evidence marked Exhibit 26. The latent print, Exhibit 23, was compared with Exhibit 26 by the expert who testified that in his opinion the latent print taken from the bottle was identical with Exhibit 26. Exhibit 25, fingerprints taken in Albuquerque, admittedly those of the defendant, were then compared with the print, Exhibit 26. The expert testified that in his opinion the prints of Exhibit 26 and Exhibit 25 were identical.

Miller bases his appeal upon the contention that admission of the fingerprint from the F. B. I. file, Exhibit 26, was prejudicial error because (1) there was no proof of authenticity of the challenged fingerprint; (2) no foundation was laid for its introduction into evidence; and (3) the testimony linking the challenged exhibit with the latent print taken from the bottle constituted the imposition of an inference upon an inference contrary to the rules of evidence. The record, however, affords no basis for the contention.

 We cannot agree that there was such a failure of proof of authenticity of Exhibit 26 as to render its admission reversible error. The undisputed evidence shows that the exhibit was an original fingerprint from the official files—the international depository for fingerprints—in Washington, D. C., and identified as such by an F. B. I. Agent having access to the files, who personally took the same from such official files or records. The correct rule respecting proof of authenticity under such circumstances is stated thusly in McCormick, Evidence, § 191, at 403 (1954):

> "If a writing purports to be an official report or record and is proved to have come from the proper public office where such official papers are kept, it is generally agreed that this authenticates the offered document as genuine. This result is founded on the probability that the officers in custody of such records will carry out their public duty to receive or record only genuine official papers and reports. * * *"

See, also, City of Columbus v. Ogletree, 102 Ga. 293, 29 S.E. 749; McLeod v. Crosby, 128 Mich. 641, 87 N.W. 883; 7 Wigmore, Evidence, §§ 2158–2159 (3d Ed.). Compare Wausau Sulphate Fibre Co. v. Commissioner of Internal Revenue, 61 F.2d 879 (7th Cir. 1932); and State v. Brady, 2 Ariz.App. 210, 407 P.2d 399.

 It must be remembered that in this case Exhibit 26 was not offered or admitted as the fingerprint of the defendant, but merely as a record of a fingerprint from an official file. A copy of the original fingerprint record certified by the lawful custodian of the F. B. I. records would have been admissible in evidence. 5 Wigmore, Evidence, § 1635a (3d Ed.). "The *record itself* is evidence of the print, if kept by authority express or implied. * * *" Fingerprint records are kept under the express authority of a federal regulation. 28 C.F.R. § 0.85. We take judicial notice of this regulation. See § 21–1–1 (44) (d) (3), N.M.S.A.1953. See, also, 5 U.S.C.A. § 301, and 5 U.S.C.A. § 301 n. 35. An examined copy of a public record, whether made by a person having or not having official custody thereof, is admissible in evidence to prove its contents. Higgins v. Fuller, 48 N.M. 218, 148 P.2d 575. Upon the same principles, the original document offered by one who has examined it in its place of official custody is equally admissible to prove its contents.

 Neither the custodian, nor one who examined the original fingerprint, can testify that the print (Exhibit 26) is the defendant's fingerprint. 5 Wigmore, Evidence, § 1635a (3d Ed.). The situation here is analogous to that of establishing that a person convicted of a felony in this state had been convicted of other felonies in another state for purposes of enhancing the penalty under the habitual criminal act. The method of proof is set forth in 5 Wigmore, Evidence, § 1678a (5) (3d Ed.), as follows:

> "Supposing that duly prepared certificates of the above sort are produced and admitted [that J. S. was convicted

of a felony in a foreign state], it then remains only necessary to call a fingerprint expert to testify whether the fingerprints thus produced are identical with those taken by the local officers from the person in the case. Where the person appears in the case on trial under a different name from the name of the person elsewhere convicted, the fingerprint will be the substantial evidence of identity; for of course the custodian of the forwarded finger-print is not in a position testimonially to assert that the person called J. S. in his custody is the person calling himself R. D. in the case on trial."

The expert who brought Exhibit 26 from the F. B. I. files, in laying the foundation for its admission, only testified that it was a document from an official file. He did not then attempt to testify to the effect of the document, i. e., that the fingerprint was that of defendant Miller.

Following the Wigmore rule, the expert witness then compared the fingerprint taken from the F. B I. files with the latent print found on the bottle at the scene of the crime, and testified that in his opinion they were identical. All that is established thus far is that the latent fingerprint and Exhibit 26 were made by the same person but there is still no proof of identity of the person making them. The proof of identity was made by a comparison of Exhibit 26 with a fingerprint admittedly of the defendant taken in Albuquerque (Exhibit 25).

The cases relied upon by defendant in support of his contention that evidence of the time, place and conditions under which Exhibit 26 was taken is necessary as a foundation for its admission are distinguishable. Those are cases where it was sought to introduce fingerprints found at the scene to place the defendant at the scene of the crime. For that purpose, proof of the place and conditions where the print was found are necessary to establish relevancy. In this case the fingerprint, as a record of a public document, is admissible as proof of its content, where proof of

relevancy is made. 5 Wigmore, Evidence, § 1635a (3d Ed.). Testimony that the print from the F. B. I. file (Exhibit 26) is identical with the admitted print of defendant's thumb (Exhibit 25) established relevancy. McCormick, Evidence, § 151 (1954). State v. Seales, 245 Iowa 1074, 65 N.W.2d 448, is distinguishable. The record was there offered to establish that the defendant had been previously convicted. That decision turned upon the proposition that the fingerprints were not in themselves proof of a prior conviction. Compare State v. Johnson, 194 Wash. 438, 78 P.2d 561. In the instant case the prints from the F. B. I. file were not originally certified or offered as the fingerprints of the defendant. That proof was made later by the comparison with a known print. We find no error in the admission of the challenged fingerprint.

■■ It is unnecessary to discuss whether identifying the latent print found on the bottle at the scene of the crime as having been made by Miller by identifying it as being identical with Exhibit 26 which in turn was identified as identical with Exhibit 25, the admitted print of the defendant, constitutes proof by an inference on an inference. The question was not preserved for review. That ground of objection was not made in the trial court. We find nothing in the record by which the mind of the trial court was clearly alerted to the question raised here. The rule is well established that the ground of an objection to the introduction of evidence must be clearly stated so that the court may intelligently rule upon the objection. State v. LaBoon, 67 N.M. 466, 357 P.2d 54; State v. Clarkson, 42 N.M. 289, 76 P.2d 1161; State v. Compton, 57 N.M. 227, 257 P.2d 915; State v. Heisler, 58 N.M. 446, 272 P.2d 660; Supreme Court Rule 20(1) (§ 21–2–1(20) (1), N.M.S.A.1953).

It follows that the judgment must be affirmed.

It is so ordered.

CHAVEZ, C. J., and NOBLE and CARMODY, JJ., concur.

MOISE, J., dissents.

MOISE, Justice (dissenting).

I hereby express my disagreement with the opinion of the majority. I see no escape from the conclusion that no proper foundation was laid for the admission of State's Exhibit 26. It is nothing more than a copy of some fingerprints of a person by the name of Lloyd L. Miller, a white male, taken by someone whose name is illegible. No evidence was introduced as to how, when, where, or by what authority the prints were taken, or from whence this document came originally. Objection was made to its introduction. I can think of no theory under which it would possibly be admissible without proof of such foundation. 5 Wigmore on Evidence (3rd Ed. 1940), §§ 1635a and 1678a; State v. Seales, 245 Iowa 1074, 65 N.W.2d 448 (1954).

Although admittedly the fingerprints in Exhibit 26 were not being introduced as LaRoi Miller's prints and thus did not need to be authenticated as such, a foundation would seem to be required so as to insure that the circumstances of their "taking" were legal. We do know that the fingerprints were taken somewhere, some time, under "official" supervision. They are not strictly latent prints. Defendant is entitled to know the time, place, and manner of the taking, so as to be able to effectively cross-examine on the surrounding circumstances. This is particularly important here because inadmissible prints had been taken pursuant to an illegal arrest, as held in the first appeal (76 N.M. 62, 412 P.2d 240 (1966). See Annots., 9 A.L.R.2d 899, 920 (1950); 28 A.L.R.2d 1115, 1144 (1953). See also, 2 Jones on Evidence, (5th Ed. 1958), §§ 442, 457; Richardson, Modern Scientific Evidence, §§ 2.15, 6.25, and 18.1–18.14 (1961). Compare Richardson, Modern Scientific Evidence, §§ 16.3, 16.19, 16.22 (1961).

I cannot agree that anything found in a file of a public office is ipso facto admissible in evidence as an official report or record without some further foundation. Exhibit 26, here being discussed, is nothing more than a sheet of paper with a set of fingerprints imposed on it and with no indication as to where, when, or by whom taken (an illegible signature of the officer who took them appears on the exhibit). Such an instrument cannot be considered to be an "official report or record," discussed in McCormick, Evidence, § 191, at 403 (1954) in the quotation set forth by the majority. Neither can it be said that it is a fingerprint record submitted and preserved as required under 28 C.F.R., § 0.85 (1967), relied on by the majority. As stated by Wigmore in Volume V of his work on Evidence (3rd Ed. 1940), § 1639, at, 545, "Practically, then, the admissibility of a given register or record depends ultimately on *whether the officer has the duty to do* the class of things recorded; *if they are within his duty then the record is admissible;* otherwise not." From this it can be seen that not everything appearing in an official file, regardless of its nature or origin, is, because of its location, to be admitted in evidence in a criminal trial. In this connection, attention is directed to the quotation by the majority from 5 Wigmore, Evidence (3rd Ed. 1940), § 1678a, at 758, and its reference to "duly prepared certification of the above sort." An examination of what is stated in the section concerning due preparation clearly demonstrates the inapplicability of the quotation under the facts of this case. Exhibit 26 in no way discloses that it was taken or forwarded, as required by 28 C.F.R., § 0.86 (1967). It does not even bear a stamp showing it to have been received and filed in the office of the F.B.I. It is not certified or authenticated. To permit its introduction so that the facts concerning its taking cannot be gone into on cross-examination, or otherwise, is in my view a denial of appellant's constitutional rights under the Sixth Amendment of the United States Constitution, made obligatory on the states by the Fourteenth Amendment, and a procedure not heretofore countenanced. Compare

Smith v. State of Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). It also violates appellant's rights under Art. II, Sec. 14, of the New Mexico Constitution.

I have no quarrel with the holding in Higgins v. Fuller, 48 N.M. 218, 148 P.2d 575 (1944). The document there held admissible was an examined copy of a tax deed issued by the state tax commission which had been compared with the copy of the original in the files of the state tax commission. The other cases relied on by the majority are similar. City of Columbus v. Ogletree, 102 Ga. 293, 29 S.E. 749 (1897), permitted introduction of a city council's minutes upon showing that the clerk in whose custody they reposed was absent from his office, and that the minutes tendered had been brought from the clerk's office by the city treasurer who was acting for the clerk in his absence. McLeod v. Crosby, 128 Mich. 641, 87 N.W. 883 (1901), involved files from a prior criminal trial permitted to be introduced on testimony of the lawyer who produced them that they were papers used in a prior trial of a case. This case directly points up the weakness in the exhibit here being discussed. Nobody was present to testify as to what the exhibit was—only concerning its last place of repose. Wausau Sulphate Fibre Co. v. Commissioner of Internal Revenue, 61 F.2d 879 (7th Cir. 1932), is in no sense comparable. Involved were papers in the files of the commissioner bearing the taxpayer's corporate seal which afforded prima facie proof of their genuineness. There was no question of what the instruments were or purported to be, or as to whether they were properly in possession of the commissioner. In State v. Brady, 2 Ariz.App. 210, 407 P.2d 399 (1965), the fingerprints offered were identified by the officers who lifted them and by the officer who compared them. Involved was a question of chain of custody, held not necessary to be established under the facts of the case. No question of chain of custody is here involved. Our concern is with their very origin. ·

Following is a quotation from VII Wigmore, Evidence (3rd Ed. 1940), § 2158, at 629, also cited by the majority:

"The case of papers purporting to be executed by another person than the official, but *filed with the record* as a part of it, is a difficult one to resolve, and there seems to be little authority regarding it; but it may be suggested that the test should be whether it is made the duty of the custodian to satisfy himself of the genuineness of the document before filing it, or whether in a subsequent part of the judicial proceedings the document in question has been treated as genuine by the Court or by the party now charged. A document satisfying either of these tests should be received as sufficiently evidenced, if it is found filed in the appropriate place. The case of a *bill* or *answer* or *affidavit* in chancery has often been passed upon in rulings which seem to justify some such generalization."

In my view, the section generally supports my conclusion that the exhibit should not have been admitted.

The majority would conclude that by virtue of the fact that the paper was found in an official file, any and all shortcomings inherent in it are instantly overcome. Clearly, the exhibit was inadmissible to prove anything unless a proper foundation had been laid. State v. Seals, supra. Compare State v. Apodaca, 42 N.M. 544, 82 P.2d 641 (1938). By what theory its deposit in an official file for an unknown period of time can serve to overcome this requirement I cannot understand. As an illustration of my argument, would a birth certificate, death certificate, letter, or other unsigned, undated and unidentified paper be admissible in court upon the mere showing that it was found in an official file? I submit the answer is "No." The exhibit in question is nothing more, and the court erred in admitting it.

Finally, it seems to me, that the discussion, rationale and disposition of State v. Apodaca, supra, clearly dictates that this

exhibit is inadmissible and, further, requires a reversal of the conviction. See, also, State v. Johnson, 37 N.M. 280, 21 P.2d 813 (1933), 89 A.L.R. 1368 (1934). The exhibit here is equally, if not more unreliable than was the one held erroneously admitted in Apodaca, supra. That it was prejudicial is self-evident. There is no other proof by which the known prints of defendant in Exhibit 25 could be compared to the prints found on the bottle at the scene of the murder. Only by showing that the prints in Exhibit 25 were made by the same person as those in Exhibit 26, and then comparing the one print in Exhibit 26 to the print on the bottle (Exhibit 23), was a complete relationship established.

I would reverse and remand the cause for a new trial because of the error discussed above. Since the majority do not agree, I respectfully dissent.