501 So.2d 406 (1987)
Moses Lee GILES
v.
STATE of Mississippi.
No. 56810.
Supreme Court of Mississippi.
January 14, 1987.
Tom T. Ross, Jr., Ross & Ross, Charles E. Webster, Twiford & Webster, Clarksdale, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Jack B. Lacy, Jr., Asst. Dist. Atty., 5th Cir. Court Dist. and Former Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and DAN M. LEE and GRIFFIN, JJ.
DAN M. LEE, Justice, for the Court:
Moses Lee Giles was found guilty, on July 10, 1985, of the armed robbery of Depositors Federal Savings in Clarksdale, Mississippi. He was found to be a habitual criminal and sentenced to forty years imprisonment. Giles appeals and assigns as error:
1) The allowance of testimony from the state's fingerprint expert as to whether *407 Giles touched a receipt left at the scene-allegedly, an ultimate question for the jury;
2) The introduction of an FBI fingerprint card into evidence, which could have indicated to the jury that Giles was guilty of another crime; and
3) The refusal of the trial court to grant Giles an instruction defining reasonable doubt.
We find no merit to any of these assignments of error and affirm the judgment of the court below.
The Clarksdale branch of Depositors Federal Savings was robbed of $2,120.75 on October 8, 1984. Present at the bank on the day of the incident were two employees  Elizabeth Wagner, the Office Manager, and Renae Gerald, Savings Consultant. At about 11:15 that morning, two men entered the bank. One man stood near the front door, while the other man came to the counter and began asking directions. When the women realized that the man was having difficulty in following their directions, they asked him whether he was from out of town. At that point, the man replied, "I'm from Bakersfield and this is a goddamned robbery."
The man jumped over the counter, gun in hand. He had the women lie down on the floor while he took money from the safe and the drawers. While taking money from one of the drawers, the robber removed some bills from a metal bill trap and set off a silent alarm.
After taking the money, the robber bound the ankles of the women with rope, while repeatedly threatening to shoot them. He told the women that he was leaving, but that he would be back, and that they should remain on the floor for five minutes. The women heard him leave, and about two or three minutes later, heard someone enter the bank. Thinking it was the robber, the women remained still on the floor. However, when they heard a voice exclaim "Oh, my God!", they realized that someone else had entered the bank, and they looked up to see Captain Gary Crocker of the Clarksdale Police Department.
The police department had received the alarm at 11:16 a.m. Crocker was the first officer to respond, arriving about two minutes later. He saw no one at the scene except the bank employees. Crocker immediately requested bloodhounds from Parchman to track the robbers, but the trail was lost after $10 in bait money was recovered in an open field.
Officer Tim Fortenberry of the Clarksdale Police Department processed the crime scene. He took fingerprints from the front door of the bank and from a petty cash receipt left at the scene. These fingerprints were later found to match those of the appellant.
Giles was arrested in Bakersfield, California, and waived extradition to Mississippi. His alibi was that he was in Bakersfield at the time of the robbery. He apparently presented witnesses to that effect, although their testimony was not transcribed as part of the record on appeal. Giles did not testify at trial.
Although Elizabeth Wagner had not been able to pick Giles out of the photographic lineup some time after the robbery, both she and Gerald identified him at trial as the man with the gun. The State's case, in corroboration, rested on the physical evidence of the fingerprints. In order to show the match-up between the prints taken at the scene and Giles' fingerprints, the State introduced an FBI fingerprint card with Giles' prints. The defense objected to the use of the card, on the grounds that the fields labelled "charge" and "date," even though they were whited out, would indicate to the jury that Giles had been arrested on another charge. The trial court overruled the objection, noting that "I don't see anything really here that indicates that he has been arrested for a prior offense different from the one that we are considering at this time."
Ron Smith of the Mississippi Crime Lab testified as a fingerprint expert. He compared the prints on the card to the prints from the door and from the petty cash slip, and was of the opinion that the prints matched. When asked his opinion about *408 whether Giles had touched the petty cash slip, Smith replied, over objection, that "there is absolutely no doubt whatsoever that that man touched this paper, the petty cash slip."
One of the defendant's proffered instructions, D-2 was refused, the argument thereon not being made a part of the record. The instruction read as follows:
The court instructs the jury that a reasonable doubt of guilt may arise from the evidence, from the lack of evidence, from an insufficiency of evidence or a conflict in the evidence, but however it arises, if it does arise in your mind, then it both justifies and demands, under your oaths, that you return a verdict of "Not Guilty."
The jury ultimately returned a guilty verdict. A later hearing was held on whether Giles should be sentenced as a habitual offender. His prior offenses were shown to be grand larceny, armed robbery, and burglary of an inhabited dwelling. The court sentenced Giles to forty years imprisonment as a habitual offender.

I. DID THE COURT ERR BY ALLOWING RON SMITH TO TESTIFY TO AN ULTIMATE QUESTION?
Several jurisdictions have been faced with the question of how far an expert witness should be allowed to go in identifying fingerprints. The modern trend is to allow the expert to state that the fingerprints admitted as evidence are those of the defendant. State v. Taylor, 201 N.W.2d 724 (Iowa 1972); Commonwealth v. LaCorte, 373 Mass. 700, 369 N.E.2d 1006 (1977); People v. Williams, 26 Mich. App. 218, 182 N.W.2d 347 (1970); State v. Maxie, 513 S.W.2d 338 (Mo. 1974), cert. denied, 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975); State v. Miller, 79 N.M. 117, 440 P.2d 792 (1968); Lester v. State, 416 P.2d 52 (Okla. Crim. 1966); Yates v. State, 488 S.W.2d 463 (Tex.Crim. 1972).
The questioning in this case went somewhat beyond what is allowed, even under the modern trend, to a fingerprint expert. There is no doubt that the question was unartfully phrased and it provoked an answer that was overly conclusive. However, it is also true that Giles was linked to the scene by his fingerprints on the door of the bank, and by the identification by two eyewitnesses. Given the overwhelming evidence of his guilt, we cannot say that the testimony of Ron Smith constituted reversible error.

II. DID THE TRIAL COURT ERR IN ADMITTING THE FBI FINGERPRINT CARD?
The card containing Giles' fingerprints was a standard FBI card, which contained a field delineated "charge" and one delineated "date". The actual information contained in these fields was whited out. We agree with the trial judge in this case that, while it was possible that the jury would infer that the card indicated prior criminal activity, it was more likely that they would simply infer that the card was related to the charge for which Giles was being tried.
In this case, the fingerprint card was essential to the State's establishment of the identity of the fingerprints on the bank door and the petty cash receipt. The State could not tell the complete story of the crime without the admission of this card.
In Brown v. State, 483 So.2d 328 (Miss. 1986), we recognized that:
[T]he state has a `legitimate interest in telling a rational and coherent story of what happened... .' Turner v. State, 478 So.2d 300, 301 (Miss. 1985); Neal v. State, 451 So.2d 743, 759 (Miss. 1984). Where substantially necessary to present to the jury `the complete story of the crime' evidence or testimony may be given even though it may reveal or suggest other crimes. State v. Villavicencio, 95 Ariz. 199, 388 P.2d 245 (1964).
Id. at 330.
Another well-recognized exception to the rule limiting admissibility of evidence of other crimes is when the evidence is used for identification. As we stated in Willoughby v. State, 154 Miss. 653, 661, 122 *409 So. 757, 759 (1929), "[E]vidence to identify the accused as the person who committed the robbery is not to be excluded simply because such evidence proves, or tends to prove, that he was guilty of another and independent crime." For these reasons, there is no merit to the assertion that the trial court erred in admitting the FBI fingerprint card.

III. DID THE TRIAL COURT ERR IN REFUSING GILES' INSTRUCTION D-2 ON REASONABLE DOUBT?
The jury was adequately instructed on reasonable doubt, and the failure to give Instruction D-2 did not constitute reversible error. Simpson v. State, 497 So.2d 424 (Miss. 1986).
For the reasons stated above, we find no reversible error in this case, and, therefore, affirm the judgment of the court below.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.