PEOPLE *v.* JOHN WILLIE WILLIAMS

1. HOMICIDE—MURDER—MANSLAUGHTER—CHARGE—EVIDENCE.

    A judge is not obliged to instruct a jury that it may convict a defendant charged with murder of the lesser offense of manslaughter unless evidence has been introduced tending to show that the lesser offense has been committed.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 6]  40 Am Jur 2d, Homicide §§ 529–535.
    53 Am Jur, Trial §§ 286, 796 *et seq.*
    Absence of evidence supporting charge of lesser degree of homicide as affecting duty of court to instruct as to, or right of jury to convict of, lesser degree.  21 ALR 603, s. 27 ALR 1097, 102 ALR 1019.
    Conviction of lesser offense, against which statute of limitations has run, where statute has not run against offense with which defendant is charged.  47 ALR2d 887.
[2]  40 Am Jur 2d, Homicide § 54 *et seq.*
[3]  21 Am Jur 2d, Criminal Law § 142.
[4]  40 Am Jur 2d, Homicide §§ 529, 535.
    53 Am Jur, Trial §§ 286, 796 *et seq.*
    Absence of evidence supporting charge of lesser degree of homicide as affecting duty of court to instruct as to, or right of jury to convict of, lesser degree.  21 ALR 603 s. 27 ALR 1097, 102 ALR 1019.
[5]  40 Am Jur 2d, Homicide §§ 529–535.
[7]  21 Am Jur 2d, Criminal Law § 358.
    29 Am Jur 2d, Evidence § 638 *et seq.*
[8]  21 Am Jur 2d, Criminal Law § 356.
    29 Am Jur 2d, Evidence §§ 278, 614, 638 *et seq.*
[9]  29 Am Jur 2d, Evidence §§ 278, 614, 638 *et seq.*
[10]  29 Am Jur 2d, Evidence § 375.
    31 Am Jur 2d, Expert and Opinion Evidence §§ 51, 123.
    58 Am Jur, Witnesses §§ 838, 847.
    Fingerprints, palm prints, or bare footprints as evidence.  28 ALR2d 1115.
[11]  31 Am Jur 2d, Expert and Opinion Evidence §§ 111–113.
    Admissibility of opinion evidence as to cause of death, disease, or injury.  136 ALR 965, s. 66 ALR2d 1082.
    Admissibility of opinion evidence as to the cause of an accident or occurrence.  38 ALR2d 13.

2. HOMICIDE—MANSLAUGHTER—DEFINITION.

Manslaughter means a homicide committed without malice, the result of temporary excitement by which the control of reason is disturbed, rather than from any wickedness of the heart or cruelty or recklessness of disposition.

3. CRIMINAL LAW—DEFENSES—INCONSISTENT DEFENSES.

A defendant in a criminal case, like a civil litigant, may advance inconsistent claims and defenses.

4. HOMICIDE — MURDER — LESSER OFFENSE — REQUIRED CHARGE — EVIDENCE.

A defendant convicted of second-degree murder was entitled to have the jury charged on the lesser offense of manslaughter where there was evidence of a slash wound on the defendant's arm, that an impromptu weapon was used to kill the victim, and that when the victim's body was found, the head was resting on towels, permitting an inference that the culprit had some solicitude for the victim's comfort, because the evidence would allow a conclusion that the defendant, if he had committed the killing, killed the victim as a result of temporary excitement by which the control of his reason was disturbed.

5. HOMICIDE — MURDER — MANSLAUGHTER — CHARGE — SCOPE OF REVIEW.

The people, in a prosecution for murder, need not negative the possibility that the crime committed was manslaughter; however, an appellate court will consider the people's evidence in determining whether the jury should have been charged on the offense of manslaughter.

6. HOMICIDE — MANSLAUGHTER — CHARGE — REQUIRED CHARGE — EVIDENCE.

A jury should have been charged on the lesser offense of manslaughter even though the defendant, convicted of second-degree murder, claimed innocence and failed to claim mitigation where the people's evidence would have supported a manslaughter conviction.

7. CRIMINAL LAW—SELF-INCRIMINATION—SILENCE.

A criminal defendant, even though he takes the stand and subjects himself to cross-examination, may not be asked why he did not tell the police, at the time of his arrest, the story he related at his trial.

8. CRIMINAL LAW—SELF-INCRIMINATION—SILENCE—ARREST.

Argument to the jury that it may infer guilt from the defendant's silence at the time of his arrest is as impermissible as an argument to the jury that they could infer guilt from the defendant's failure to take the stand at trial.

9. CRIMINAL LAW—SELF-INCRIMINATION—SILENCE—ARREST.

Allowing the prosecutor to imply to the jury that they could infer that the defendant was guilty of murder because when he was told he was under arrest for homicide the defendant said nothing was reversible error, even though a cautionary instruction was later given to the jury.

10. WITNESSES—EXPERT WITNESS—OPINION—DATA—COURT RULE.

An expert fingerprint witness in a criminal trial may state his opinions and supporting reasons without first specifying the data on which they were based; counsel on cross-examination may require the specification of the data (GCR 1963, 605).

11. WITNESSES—EXPERT WITNESS.

Allowing a foreman of the plant in which the defendant worked to testify that the cut on the defendant's arm appeared to him to have been made by a sharp edge, rather than by a nail or a tack was not error where the cut was clean and where in the foreman's experience, a nail or a tack would tear.

Appeal from Recorder's Court of Detroit, Robert Lee Evans, J. Submitted Division 1 April 13, 1970, at Detroit. (Docket No. 7,437.) Decided August 26, 1970.

John Willie Williams was convicted of second-degree murder. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Cole,* for defendant.

Before: T. M. BURNS, P. J., and LEVIN and DAVIDSON,[*] JJ.

LEVIN, J. The defendant John Willie Williams was convicted by a jury of second-degree murder.[1]

The victim was his wife. They were married in 1964 and separated in 1967. A neighbor of the wife testified that two weeks before the homicide he overheard a heated argument between the defendant and his wife and heard the defendant threaten to kill her. On May 1, 1968, policemen were summoned to the wife's home and discovered her body. Multiple stab wounds had been inflicted but the people charged that the immediate cause of death was a bludgeoning administered with the porcelain top of a toilet. A fingerprint in a bloodstain on the porcelain surface matched one of the defendant's fingerprints.

The defendant testified that when the crime was committed he was traveling to a union meeting only to find that the meeting had been postponed.

The first assignment of error is based on the judge's refusal to instruct the jury that it could convict the defendant of the lesser offense of manslaughter.

The general rule appears to be well established that a judge is not obliged to instruct a jury that it may convict one charged with murder of the lesser offense of manslaughter unless evidence has been introduced tending to show that the lesser offense has been committed.[2] We think there was sufficient

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA § 750.317 (Stat Ann 1954 Rev § 28.549).

[2] The cases are collected in extensive annotations: Absence of evidence supporting charge of lesser degree of homicide as affecting duty of court to instruct as to, or right of jury to convict of lesser degree, 21 ALR 603, 27 ALR 1097, 102 ALR 1019. Similarly, see 40 Am Jur 2d, Homicide, §§ 529, 530; 53 Am Jur, Trials, §§ 798, 799.

evidence in this case tending to show that the lesser offense was committed.

Manslaughter has been defined as homicide committed without malice, "the result of temporary excitement by which the control of the reason is disturbed, rather than from any wickedness of the heart or cruelty or recklessness of disposition." *People* v. *Droste* (1910), 160 Mich 66, 79.[3]

At the trial the people stressed the evidence that the defendant had a slash wound on his arm. (He claimed that the wound was suffered while he was working.) The same evidence would support the inference that he had been involved in an affray with the victim, and that she had slashed at him with the knife found at the scene. It is entirely true, as the prosecutor successfully argued before the trial judge, that there is inconsistency in claiming that the defendant did not commit the crime and in contending that if he did he acted in the heat of passion. However, a defendant in a criminal case, like a civil litigant, may advance inconsistent claims and defenses.[4]

The people's evidence in this, as in many murder cases, is largely circumstantial. Although they were estranged, the defendant frequently visited his wife.

---

Our statute provides:

"Upon an indictment for any offense, consisting of different degrees, as prescribed in this chapter, the jury may find the accused not guilty of the offense in the degree charged in the indictment and may find such accused person guilty of any degree of such offense, inferior to that charged in the indictment, or of an attempt to commit such offense." MCLA § 768.32 (Stat Ann 1954 Rev § 28.1055). See *People* v. *McDonald* (1861), 9 Mich 150.

[3] See, also, *People* v. *Austin* (1923), 221 Mich 635, 645; Perkins, Criminal Law (2d ed), pp 69, 70; *People* v. *Clark* (1967), 5 Mich App 672, 678.

[4] GCR 1963, 785.1, 11.1, 111.9(2); *cf. People* v. *Herrera* (1968), 12 Mich App 67, 86 (the defendant was charged with murder, the defense was insanity; it was, nevertheless, held proper to instruct the jury it could convict her of manslaughter); *People* v. *Shavers* (1969), 269 Cal App 2d 886 (75 Cal Rptr 334); *State* v. *Todd* (1965), 264 NC 524 (142 SE2d 154).

He claimed that the fingerprint on the porcelain top was imprinted when he fixed the toilet on the Saturday preceding the homicide. No one saw the culprit enter or leave the wife's house or knew the precise time the crime was committed.

There was the evidence of the slash on the defendant's arm, the threat two weeks before his wife's death, the fingerprint and, after the defendant put in his defense, his inability to account fully for his time. From this the jury was permitted to find him guilty of second-degree murder.

By the same token, from the evidence that his arm was slashed, that an impromptu weapon, a porcelain top of a toilet was used to bludgeon his wife to death and that when her body was found her head was resting on towels, which the prosecutor argued permitted the inference that the culprit was a person of some solicitude for her comfort, such as an estranged husband, the jury could properly conclude, after having found that the defendant committed the crime, that what he did was not with the purpose of causing his wife's death or out of the wickedness of his heart or cruelty or recklessness of disposition but rather was the result of temporary excitement by which the control of his reason was disturbed.[5]

In *People* v. *Milhem* (1957), 350 Mich 497,[6] the defendant was charged with murder and convicted of manslaughter. The defense was accidental shooting. There was a history of prior quarreling between the

---

[5] *Cf. People* v. *Clark, supra.*

[6] Similarly, *People* v. *Clark, supra; People* v. *Droste* (1910), 160 Mich 66 (where, also, there were no eyewitnesses and the people's evidence was circumstantial) ; *People* v. *Hamilton* (1889), 76 Mich 212, 216; *People* v. *Herrera, supra; People* v. *McDonald, supra,* p 152; *People* v. *Prague* (1888), 72 Mich 178, 180; *People* v. *Person* (1969), 20 Mich App 246. *Cf. People* v. *Treichel* (1924), 229 Mich 303; *People* v. *Andrus* (1951), 331 Mich 535; *People* v. *Garner* (1920), 211 Mich 44; *People* v. *Abbott* (1893), 97 Mich 484, 488; *People* v. *Starkey* (1969), 20 Mich App 492, 495.

defendant-wife and the victim-husband. Although the wife did not claim that her husband provoked her at the time of the shooting, the Supreme Court said that the jury might find provocation at the time of the shooting from the prior history of quarreling. This, of course, means that even though the wife advanced a defense inconsistent with a finding of provocation and even though there was no direct evidence whatsoever that at the time of the homicide her husband provoked her, the jury was permitted to infer the necessary provocation from other circumstances.[7]

In *Marcum* v. *Commonwealth* (1947), 305 Ky 92 (202 SW2d 1012), the Court of Appeals of Kentucky reversed the defendant husband's conviction of murder because the judge did not instruct on voluntary manslaughter. The victim had suffered a stab wound over the heart. Her face and neck were somewhat scratched and bruised. The defense, as here, was alibi. The Court ruled that the scratch and bruise marks "would indicate some sort of a struggle before her death. * * * The duty of reconstructing what happened on those premises that tragic morning is impressed on the jury, and we cannot say under the evidence that Cora Marcum's death was murder and nothing else." The Court observed (p 94):

"It is likewise as well recognized that where there is evidence of a struggle or other unusual circumstance from which a jury might infer a lesser de-

[7] This is a stronger case for instructing on the lesser offense because in *Milhem* the defendant not only did not contend that she had been provoked but additionally objected to the case being submitted to the jury on that basis. The defendant here, like Mrs. Milhem, makes no claim that he acted under adequate provocation. He, like Mrs. Milhem, asserted an inconsistent defense. But, recognizing that the defense advanced might be rejected, the defendant here sought to have the case submitted to the jury on the theory that he acted under provocation.

gree of the crime or an exoneration of it, the instructions must give the whole law of the case, including voluntary manslaughter, involuntary manslaughter and self-defense. [Citations omitted.] The rationale of this latter principle is that, because there is no direct proof of what actually happened, the jury must reconstruct the crime and should be authorized to return a verdict based upon whatever state of facts it may reasonably infer to have existed. While the defendant in this and similar cases takes the position that he was not present and therefore could not have committed the homicidal act, the jury may have evidence upon which to reach the conclusion that defendant was there, but that he was not guilty of murder in the first degree."

It is indeed true that in a prosecution for murder the people need not negative the possibility that the crime committed was manslaughter.[8] However, on the same principle that requires us to consider the defendant's proofs in determining the sufficiency of the evidence to convict, we consider the people's evidence in determining whether the jury should be instructed on the lesser offense of manslaughter.[9] The jurors, in opposition to both the defendant's claim of innocence and his failure to claim mitigation, should have been permitted, upon the evidence presented, appraised in the light of their life experience, to find the defendant guilty of voluntary manslaughter.

The second assignment of error relates to testimony concerning the defendant's conduct at the time of his arrest and the prosecutor's jury argument based on that testimony. The defendant claims that his Fifth Amendment right not to be compelled to be a witness against himself was violated.

---

[8] The people discharge their burden when they prove that the defendant killed the victim intentionally or acted so recklessly or wantonly as to be the equivalent of actual intent to kill.

[9] *People* v. *Hamilton, supra,* p 216.

At the trial, when a police officer began to relate a conversation with the defendant, the jury was excused and a separate record was made. The officer said that the defendant was advised "that he was arrested for investigation of murder, and at no time did he ask who was supposed to have been murdered. We told him." The defendant's counsel objected and the judge ruled that the testimony was inadmissible.

When the officer testified in the presence of the jury he related a statement made by the defendant after his arrest and said "We told him he would have to accompany us back to Detroit, that we wanted to talk to him regarding a homicide; Q. Did you tell him at the time whose homicide? A. No, sir, we did not." The forbidden question, "Did he ask you who was murdered?", was not asked.

During the prosecutor's cross-examination of the defendant the following occurred:[10]

---

[10] The apparent reason for asking the questions was to provide a basis for the questions later put to the police officer when he was recalled to the stand and the subsequent tacit admission jury argument by the prosecutor.

When questions of the kind put by the prosecutor are asked of a defendant there are two possible answers. Either the defendant will claim that he made a statement to the police or that he did not. If his answer is that he did not, then manifestly the people have been permitted, in violation of the defendant's Fifth Amendment right, to place before the jury the fact that he did not make a statement.

On the other hand, if the defendant claims, during direct examination, that he made a statement, the people have a right during cross-examination to question him regarding that statement. Similarly, if a witness on direct examination testifies that the defendant made a statement, the people have the right to inquire of the defendant, should he take the stand, whether he concedes or denies that the statement was made.

If the person to whom the people claim the statement was made either does not testify or does not during his testimony relate the statement, then the defense has been misled because a defendant in a criminal case has a right to assume that all testimony regarding statements he is alleged to have made to witnesses known and available to the people will be introduced as part of the people's case in chief:

"The prosecutor in a criminal case, is not at liberty, like a plaintiff in a civil case, to select out a part of an entire transaction which

"*Q.* They wanted to talk to you, but they did not tell you that you were under arrest?

"*A.* No, sir, he did not.

"*Q.* And you didn't ask them why?

"*A.* I asked them what was the trouble.

"*Q.* What was the answer that you got?

"*A.* They said that they wanted to talk to me downtown. &ast; &ast; &ast;

"*Q.* But it is your testimony that they did not tell you that you were under arrest?

"*A.* That's correct.

"*Q.* They did not tell you what for?

"*A.* That is correct.

"*Q.* Did you ask them?

"*A.* Yes I did.

"*Q.* Did they tell you then?

"*A.* They did not."

The police officer was then recalled by the prosecutor to the stand:

"*Q.* After you said this to him did the defendant say anything to you?

---

makes against the defendant, and then to put the defendant to the proof of the other part, so long as it appears at all probable from the evidence, that there may be any other part of the transaction undisclosed." *Hurd* v. *People* (1872), 25 Mich 405, 416; *People* v. *Ake* (1961), 362 Mich 134, 137.

If, on the other hand, the people claim that no statement was made and the prosecutor, nevertheless, challenges the defendant and obtains an answer from him that a statement was made and the prosecutor seeks to introduce rebutting testimony, then plainly the prosecutor is seeking by indirection to place before the jury the impermissible testimony that no statement was made.

In summary, on cross-examination of a defendant in a criminal case, he may be questioned concerning (1) any statement that, during his direct examination, he claims he made, and (2) any statement any other witness, during the people's case in chief, claims he made. He may not, however, be asked on cross-examination whether, when confronted with the charge, he made a statement not adduced during the people's case or referred to during his direct examination because to allow such a question violates either (1) the defendant's right to have the people introduce during their case in chief all statements claimed to have been made by him before he is put to his proofs, or (2) permits bringing to the jury's attention evidence that the defendant did not make a statement, which would be an impermissible reflection on his exercise of his right to remain silent.

"*A.* The only thing he said is, 'I haven't done anything wrong, I don't even owe a traffic ticket.'

"*Q.* Did you further elaborate when you used the word homicide?

"*A.* No, sir, I did not.

"*Q.* Did you say who was killed—did he ask you?"

The defendant's objection was sustained. But the prosecutor continued:

"*Q.* Did you notify the defendant that he was under arrest?

"*A.* Yes, I did.

"*Q.* Did he say anything about this?

"*A.* No, sir.

"*Q.* Was there any further conversation between you and the defendant before you got to the automobile to go to Detroit?

"*A.* Nothing regarding his arrest, no."

Although the prohibited question had not been directly answered, in his closing argument to the jury the prosecutor argued, over objection:

"Put yourself in the defendant's shoes for just one moment now, now you are innocent people, say for instance you know about a crime, a police officer comes to you after work and says he wants you for investigation of a homicide  *  *  *  would you sit there, wouldn't you say who, where and how? Wouldn't you ask something, of course you would if you were innocent. Did the defendant do this, no, he did not. He went along to the Detroit police headquarters, and what does that suggest to you?"

At the conclusion of the prosecutor's argument and after the jury had been excused, the defendant's counsel moved for a mistrial on the ground that the argument just quoted was an impermissible comment on the defendant's exercise of his right to remain silent. The motion was denied.

In *People* v. *Seales* (1969), 16 Mich App 572, we reversed the defendant's conviction and remanded for a new trial where a similar argument was made, saying that it "constituted prejudicial comment upon defendant's prior exercise of his well-recognized right to remain silent in the face of accusation or interrogation. Defendant was not required to speak and his exercise of his constitutional right may not be penalized."[11] More recently, in *People* v. *Hicks* (1970), 22 Mich App 446, we held that even though a defendant in a criminal case who takes the stand subjects himself to cross-examination[12] he may not be asked why he did not tell the police at the time of his arrest the story he related at the trial (p 452):

"In the case before us there can be no question that by allowing cross-examination which shows that defendant exercised his privilege to remain silent he was required to pay a penalty for same. Juries composed of ordinary laymen not trained in the law tend to associate the exercise of the Fifth Amendment privilege with guilt rather than possible innocence and exposure to ambiguous compromising situations."

---

[11] Contrast *People* v. *Pearce* (1969), 20 Mich App 289, where the issue was first interjected during cross-examination of a witness called by the people; *People* v. *Jew* (1970), 21 Mich App 408, 413, where the fact that the defendant had not made a statement came in inadvertently in an unresponsive answer by a witness; *People* v. *Lamson* (1970), 22 Mich App 365, where again the answer came in, it would appear, without any intention on the part of the prosecutor to suggest the impermissible inference, and where no objection was made nor curative instruction requested.

In *Pearce, Jew,* and *Lamson* the testimony that the defendant made no statement when arrested was left at large without any effort by the prosecutor to exploit the statement in argumentation to the jury. In this case, the jury was told not only that the defendant remained silent but what the probable meaning of that silence was—that the defendant knew who had been killed because he had done it.

[12] We note that in *Seales* as well the defendant took the stand and the testimony on which the prosecutor's impermissible jury argument was based came out during cross-examination of the defendant.

The tacit admission argument is a legally impermissible argument. It is just as impermissible to argue to the jury that it may infer guilt from silence as it would be to argue that it may infer guilt from a failure to take the stand.

The effect upon the jury is likely to be substantially the same whether the tacit admission argument is based upon testimony elicited during an examination of the defendant, as in *Seales* and *Hicks,* or of other witnesses.[13] Howsoever the impermissible innuendo is injected it penalizes the defendant for exercising his constitutional right to remain silent and, therefore, chills exercise of that right.

We are not persuaded that the error was harmless beyond a reasonable doubt. Nor do we think the prejudice to the defendant was eliminated when, during his instructions to the jury, the judge again brought to the jury's attention the fact that the defendant had "failed to ask who was supposed to have been murdered," adding that it would not be proper for the jury to consider the defendant's failure to ask questions at the time of his arrest as a basis for an inference of guilt. The highly damaging inference is not so easily erased.

We now turn to other issues raised by the defendant which are likely to arise again at the retrial. Under GCR 1963, 605 it was proper to allow the people's expert fingerprint witness to state his opinion and supporting reasons without first specifying the data on which they were based, leaving it to the defendant's counsel upon cross-examination to require specification of the data. GCR 1963, 605 is applicable in criminal cases.[14]

---

[13] See *People v. Bigge* (1939), 288 Mich 417, 420; *People v. Fry* (1969), 17 Mich App 229, 233.

[14] See GCR 1963, 785.1; *People v. Woody* (1966), 3 Mich App 729, 731; *People v. Herrera* (1968), 12 Mich App 67, 80, 81.

The defendant's contention that the fingerprint expert's testimony should have been excluded because he testified only that there were ten points of similarity—not to points of identity—between the fingerprint found on the porcelain top and one of defendant's fingerprints does not present a question of law on this record.  If defendant seriously contends that an identification based upon points of similarity rather than of identity is not scientifically accurate, then upon the retrial he should support that contention with evidence.[15]

Nor was it error to have allowed a foreman at the plant where the defendant worked to testify that the cut on the defendant's arm appeared to him to have been made by a sharp edge, rather than by a nail or a tack, because it was a clean cut and in the foreman's experience a nail or a tack would tear.[16]

Reversed and remanded for a new trial.

All concurred.

---

[15] See, generally, Anno: Fingerprints, palm prints, or bare footprints as evidence, 28 ALR2d 1115; 31 Am Jur 2d, Expert and Opinion Evidence, § 123.

[16] See *Elliott* v. *Van Buren* (1875), 33 Mich 49, 53; *DeGroot* v. *Winter* (1933), 265 Mich 274.