PEOPLE v ROSEMARY GIBSON

1. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT TO REMAIN SILENT—
   WITNESSES—DIRECT EXAMINATION—CROSS-EXAMINATION.

   The constitutional right to remain silent as a general rule pre-
   cludes a prosecutor from cross-examining a defendant witness
   as to why the defendant failed to make certain statements
   when interrogated by the police; however, where defense coun-
   sel, on direct examination of defendant, opens the door by
   asking questions regarding the defendant's nonutterances the
   prosecution may cross-examine the defendant on those matters.

2. CRIMINAL LAW—APPEAL AND ERROR—FAILURE TO OBJECT—EVI-
   DENCE—IMPROPER REBUTTAL.

   The Court of Appeals generally will not reverse a conviction
   because of the prosecution's use of an improper rebuttal wit-
   ness or because the questions of the prosecutor, on rebuttal,
   exceeded the proper scope of rebuttal testimony where no
   objection was made at trial by the defendant.

3. CRIMINAL LAW—EVIDENCE—REBUTTAL—CASE IN CHIEF—DISCRE-
   TION OF TRIAL JUDGES.

   Ordinarily a prosecutor is prohibited from calling a rebuttal
   witness to offer testimony which should have been introduced
   in his case in chief; however, it is within the discretion of the
   trial court whether evidence which could have been offered
   before the prosecution rests may later be given in rebuttal.

4. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—ORDER OF
   PROOF—REBUTTAL TESTIMONY—DISCRETION OF TRIAL JUDGES—
   GOOD CAUSE.

   A trial judge did not abuse his discretion by allowing the prosecu-

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 638 *et seq.*
[2, 5] 30 Am Jur 2d, Evidence § 1022.
    75 Am Jur 2d, Trial §§ 166, 167, 708.
[3, 4] 29 Am Jur 2d, Evidence § 269.
[6] 40 Am Jur 2d, Homicide §§ 53, 498–500.
[7, 8] 29 Am Jur 2d, Evidence §§ 708, 713.
    41 Am Jur 2d, Indictments and Informations §§ 56, 60.
    58 Am Jur 2d, New Trial § 41.

tion to call a res gestae witness for the first time on rebuttal where (1) part of the witness's testimony directly refuted a portion of a defendant's testimony, (2) there was good cause shown for changing the order of proofs because the witness was unknown to the prosecution when the prosecution rested and the court was faced with a situation of allowing the prosecutor to reopen his proofs or to present the witness in rebuttal, (3) defense counsel seemed to have been aware of the witness's existence and was not surprised by her appearance, and (4) the testimony which was not properly within the scope of rebuttal was not prejudicial in that it merely supported previous testimony.

5. CRIMINAL LAW—APPEAL AND ERROR—INSTRUCTIONS TO JURY—FAILURE TO OBJECT—MANIFEST INJUSTICE—MATERIAL MATTERS.

An erroneous instruction to a jury will not warrant reversal absent a showing of manifest injustice where there has been no objection made to the instruction; however, this test does not foreclose reversal on an uncorrected instruction on a material matter.

6. HOMICIDE—SECOND-DEGREE MURDER—INSTRUCTIONS TO JURY—MALICE.

An instruction to a jury on the element of malice in a second-degree murder charge where the judge told the jury that if they should find an unprovoked, unjustifiable, or inexcusable killing the law will imply malice was not improper, because a finding of these preliminary facts was a finding of malice as the term is defined.

7. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—APPEAL AND ERROR—MOTIONS—NEW TRIAL.

The issue of a prosecutor's failure to indorse and produce res gestae witnesses is not before the Court of Appeals where no motion for a new trial had been made in the trial court.

8. WITNESSES—CRIMINAL LAW—APPEAL AND ERROR—RES GESTAE WITNESSES—FAILURE TO INDORSE—HARMLESS ERROR.

A prosecutor's failure to indorse and produce res gestae witnesses was harmless error where the proof of a defendant's guilt was so overwhelming aside from the taint of error that a reasonable juror would find guilt beyond a reasonable doubt.

Appeal from Recorder's Court of Detroit, Samuel C. Gardner, J. Submitted June 14, 1976, at Detroit. (Docket No. 21987.) Decided October 18, 1976.

Rosemary Gibson was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Research, Training and Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

*Kathleen M. Cummins,* Assistant State Appellate Defender, for defendant.

Before: V. J. BRENNAN, P. J., and N. J. KAUFMAN and R. H. CAMPBELL,* JJ.

N. J. KAUFMAN, J. Defendant, Rosemary Gibson, was convicted by a jury in Detroit Recorder's Court of second-degree murder, MCLA 750.317; MSA 28.549. The court sentenced the defendant to the maximum term of life imprisonment. She appeals as of right and advances numerous questions for appellate review. We, however, find only four of these claims merit discussion.

The pertinent facts in this case may be briefly stated. The prosecution's case rested primarily upon the testimony of several eyewitnesses to the homicide. In skeletonized form, they testified as follows: The defendant and Eddie Richardson, defendant's purported common-law husband, engaged in an argument over an incident which had occurred earlier in the evening. After their disagreement, defendant returned to the inside of their residence. Shortly thereafter, defendant returned to the porch and demanded that one Robert Morris, a friend of Richardson's, immediately return her handgun. Morris refused. However, she

---

* Circuit judge, sitting on the Court of Appeals by assignment.

bolstered her vociferous objections to his retaining possession with the shotgun she was brandishing. At this time, due in no small measure to the shotgun, defendant was successful in her attempt to regain possession of the handgun.

Further testimony elicited from these witnesses indicates that the defendant returned inside of the house after she reacquired possession of the handgun. Later, however, defendant returned to the porch and shot Eddie Richardson with the handgun for no apparent reason. With a third shot, Richardson fell off the chair. According to one witness, the defendant "just stood up there and finished shooting" while Richardson sprawled on the ground beneath her.

After all of the witnesses, save one, testified, the defendant took the stand in her own behalf, and told the jury her version of the facts leading to Richardson's death. In essence, her testimony set forth the contention that Richardson threatened her life with a knife, she was in fear of grave bodily harm and, therefore, she took his life in self-defense. Obviously, her recounting of the facts differed materially from that of the prosecution's witnesses. Her testimony, however, was consistent with a statement made to the police after her arrest. On cross-examination, the prosecutor, while not attacking any inconsistencies between her testimony and statement to police, repeatedly questioned why the defendant did not tell the police the whereabouts of the murder weapon. She answered, "they never asked".

I

The defendant presses as a threshhold argument that the aforementioned questioning of the defendant regarding her "nonutterances" violated her

constitutional right to remain silent and was a clear *Bobo* error.[1] Defendant vigorously asserts that a defendant's silence may not be used as evidence of guilt at trial. *Bobo, supra, People v Jablonski,* 38 Mich App 33; 195 NW2d 777 (1972), *People v Hicks,* 22 Mich App 446; 178 NW2d 193 (1970). Nor may it be used to impeach the defendant's credibility as a witness, *Bobo, supra, People v Williams,* 26 Mich App 218; 182 NW2d 347 (1970). This is so, defendant contends, even where, as here, the defendant gave a voluntary statement to police, but failed to mention a salient detail of the purported crime. Specifically relied upon by the defendant for her conclusion is the following language from *Bobo:*

"We will not condone conduct which directly or indirectly restricts the exercise of the constitutional right to remain silent in the face of accusation. 'Nonutterances' are not statements. The fact that a witness did not make a statement may be shown only to contradict his assertion that he did." 390 Mich at 359.

The prosecutor retorts that the cases relied upon by defendant are inapposite to the factual context in the instant case. The prosecutor points out that the defendant voluntarily testified as to her nonutterances regarding the whereabouts of the gun at the time of her arrest on direct examination. Traditionally, once the door is opened on direct examination, the prosecution may question the defendant on these matters on cross-examination. *People v Roger Johnson,* 382 Mich 632; 172 NW2d 369 (1969), *cert den* 397 US 1079; 90 S Ct 1533; 25 L Ed 2d 816 (1970), *People v Markham,* 19 Mich App 616; 173 NW2d 307 (1969). In light of defense counsel's questioning, the prosecutor maintains,

---

[1] *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973).

the colloquy with the defendant regarding her post-arrest nonutterances was proper. We agree.

Under the circumstances of the present case, the defendant's right to remain silent was not violated. "Violation of that right clearly results from prosecutorial cross-examination of the defendant asking * * * [her] why * * * [she] did not tell the police * * * [her] version of the facts when arrested, *if defendant makes no allegations on direct examination as to what was said or was not said at the time of * * * [her] arrest.*"[2] (Emphasis supplied.) Defendant did make such allegations on direct examination. Therefore, the questions by the prosecutor were proper.

## II

Defendant next asserts that the trial court abused its discretion in allowing the prosecutor to present rebuttal testimony of an unindorsed res gestae witness. This contention arose from the following facts: After the prosecution had rested and the defense had begun its presentation, the prosecutor informed the court that he had discovered another res gestae witness who had only now come forward, whose testimony he wished to introduce. The good faith and due diligence of the prosecutor went unchallenged at trial, as it appeared that the witness had intentionally absented herself from detection.

Defense counsel immediately objected to the witness taking the stand. His objection was founded principally upon the premise that he was surprised by the introduction of the witness. The trial court was not persuaded by defense counsel's arguments and deemed them "premature". The

---

[2] *People v Perez,* 66 Mich App 685; 689; 239 NW2d 432, 434 (1969).

trial judge further noted that he could not escape the conclusion that the responses of the defense counsel made it sufficiently likely, despite assertions to the contrary, that he was aware of the existence of the witness and, therefore, there was truly no surprise. The trial judge then ruled that the testimony of the witness would be deferred until rebuttal. He also allowed defense counsel the opportunity to listen to a recorded interview taken of the witness by the prosecutor after disclosure of her existence.

On appeal, it is urged that the testimony of the rebuttal witness properly belonged in the prosecutor's case in chief, since it tended to prove the actual commission and immediate surroundings of the crime. *People v Quick,* 58 Mich 321; 25 NW 302 (1885). Further, defendant maintains that this testimony violated defendant's right to a fair trial, as it allowed the prosecutor to chip away at defendant's testimony in rebuttal with more evidence of the surrounding circumstances of the crime. *People v Rose,* 268 Mich 529; 256 NW 536 (1934), *People v Parker,* 65 Mich App 592; 237 NW2d 572 (1975).

Initially, we note, significantly, a critical factor is the failure of defense counsel to object specifically to the witness as an improper rebuttal witness. Nor did he object to any of the questions of the prosecutor as exceeding the proper scope of rebuttal testimony. This is normally viewed as a prerequisite to raising errors of this type on appeal. Hence, generally, where no objection is made to the order of proof we will not reverse. See *People v Atcher,* 65 Mich App 734; 238 NW2d 389 (1975), *People v Van Riper,* 65 Mich App 230; 237 NW2d 262 (1975).

We need not rest our decision on these grounds,

however. We agree with the defendant that "ordinarily a prosecutor is prohibited from calling a rebuttal witness to offer testimony which should have been received in his case in chief. *People v Quick* [citation omitted]. It is still the rule, however, that the decision as to 'whether evidence which could have been offered before resting may be given in rebuttal is a matter within the discretion of the trial court'. *People v Utter,* 217 Mich 74; 185 NW 830 (1921)".[3] We find the decision of the trial court was not an abuse of discretion here.

Part of the testimony of the witness was proper rebuttal because it directly tended to disprove exact testimony given by a witness. *Parker, supra,* p 595. The defendant indicated on direct examination that she was not familiar with the operation of a gun and, furthermore, she did not know this particular gun was loaded. The testimony of the rebuttal witness directly refuted this testimony. Defendant, several hours before the commission of the homicide, gave the rebuttal witness the handgun for safekeeping. She specifically instructed the witness on how to operate the gun and further indicated that the witness should be careful as the gun was loaded. We can only conclude this portion of the testimony was proper rebuttal.

Furthermore, it is clear that the rest of the testimony was also proper. In *Quick,* the Supreme Court made an exception to the normal order of proof where "good cause" is shown. See also 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 609, p 790. This is such a case. The trial judge was faced with a situation where the prosecutor could either re-open his proofs or present the witness in rebuttal. This was the first opportunity the prosecutor had to present the witness, as she

[3] *People v Ebejer,* 66 Mich App 333, 340–341; 239 NW2d 604 (1976).

was unknown to him prior to this time. Inclusion of the witness in rebuttal presented no greater possible prejudice to the defendant than by allowing the prosecutor to re-open his proofs. This is particularly true where, as here, defense counsel appeared to be aware of her existence. Moreover, the trial court felt that the placement of the witness in rebuttal would allow the defendant the opportunity to investigate the witness's background and probable testimony. It therefore appears good cause was shown; hence, no abuse of discretion.

Finally, the rebuttal testimony which was not properly within the scope of rebuttal was not prejudicial in that it merely supported previously stated testimony. *People v Cox,* 70 Mich 247; 38 NW 235 (1888), *People v Leonard E Smith,* 15 Mich App 173; 166 NW2d 504 (1968), *People v Joseph Barbara, Jr,* 23 Mich App 540; 179 NW2d 105 (1970). Moreover, any possible prejudice by the prosecutor getting the last shot was alleviated by the surrebuttal testimony which the defendant gave.

It should be clear from a full consideration of all the foregoing reasons, that no reversible error was committed here.

### III

Defendant next contends that the trial court erred in his charge to the jury on second-degree murder, by removing the essential element of malice from their consideration in clear violation of *People v Martin,* 392 Mich 553; 221 NW2d 336 (1974), where he stated as follows:

"So when one, without any legal provocation, justification, or excuse, intentionally kills another, he is

called a Murderer. The law implies from such unprovoked, unjustifiable, or inexcusable killing the existence of that wicked disposition which the law terms 'malice aforethought'. Thus, if the defendant intentionally killed without provocation, justification, or excuse, your verdict should be Guilty of Second Degree Murder. * * * If a man kills another suddenly, without provocation, the law implies malice, and it is Murder."

On appeal, where no objection is made to an instruction, even if erroneous, the instruction will not warrant reversal by this Court absent a showing of manifest injustice. *People v Cain,* 67 Mich App 433, 438; 241 NW2d 233 (1976), *People v McShan,* 53 Mich App 407, 415; 219 NW2d 792 (1974). However, this test does not foreclose our reversal on an uncorrected instruction on a material matter. *People v Townes,* 391 Mich 578; 218 NW2d 136 (1974), *People v Liggett,* 378 Mich 706; 148 NW2d 784 (1967), *People v Lyles,* 67 Mich App 620; 242 NW2d 452 (1976). If we find *Martin* error, this justifies reversal.

The obvious purpose of *Martin* was to insure that there be a fair and impartial determination by the jury which decides the case on the evidence, not on the basis of a predetermined bias acquired from the trial judge. It is on this theory that the language by Justice CHRISTIANCY, quoted approvingly in *Martin,* pp 561–562, is particularly instructive:

"It is for the court to define the legal import of the term, malice aforethought, or, in other words, that state or disposition of mind which constitutes it; but the question whether it existed or not, *in the particular instance,* would, upon principle, seem to be as clearly a question of fact for the jury, as any other fact in the cause, and that they must give such weight to the various facts and circumstances accompanying the act,

or in any way bearing upon the question, as in their judgment, they deserve: and that the court have [sic] no right to withdraw the question from the jury by assuming to draw the proper inferences from the whole, or any part of, the facts proved, as presumption of law. If courts could do this, juries might be required to find the fact of malice where they were satisfied from the whole evidence it did not exist." (Emphasis by Court.) *Maher v People,* 10 Mich 212, 218 (1862).

Certainly, in the present case, the conclusion is inescapable that the charge does not suffer the same deficiencies that caused reversal in *Martin.* It is, of course, possible, perhaps probable, that many a defendant before this Court will enthusiastically grasp the language "the law implies malice" in each and every situation and claim reversible error. We think this is wrong and is an incorrect reading of *Martin.*

The underlying question before this Court is, again, whether the charge took away from the jury's determination that important element of "malice aforethought". We think not. In the instant case, the trial judge instructed the jury that should they find an "unprovoked, unjustifiable, or inexcusable killing" the law will imply malice. The preliminary facts were for the jury to decide. Nothing was taken away from their determination. Certainly, upon finding an "intentional, unprovoked, unjustifiable and inexcusable killing" the jury was mandated by the law to find malice aforethought, as that is the definition of the term. See generally, 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1647, p 1980.

There is, in fact, no basis here for comparing this to the charge in *Martin. Martin* dealt with the use of a deadly weapon in the commission of a homicide. The trial court charged that " 'if a man

kills another suddenly without any warning, where a deadly weapon is used the law implies malice and the killing is murder' ". *Martin,* p 560. This differs substantially from the situation here, in that the mere finding by the jury that the defendant used a deadly weapon *compelled* their determination in *Martin* that malice was shown regardless of the jury's decision regarding his intent. The use of a weapon in the perpetration of a killing can be insolubly ambiguous; no conclusion of malice can always be discerned solely from its use. However, with the present charge, a jury which finds all of the aforementioned preliminary facts has in fact found malice and the law does conclude malice exists from such a finding. Fundamentally, we submit, this differs from *Martin.* Hence, we affirm.

## IV

Defendant finally argues that the prosecutor's failure to indorse and produce four res gestae witnesses mandates either reversal or remand for a *Robinson* hearing. *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973). We need not discuss this issue, as it is not properly before us; no motion for new trial having been made in the court below. *Robinson, supra, People v Kelly,* 66 Mich App 634; 239 NW2d 691 (1976), *People v Ebejer, supra.*

Even if we were to reach this issue, we can find nothing to indicate that it mandates reversal. It may be true that the prosecutor was remiss in his investigation, however, we find the error harmless. We do not base our decision on the often used "cumulative testimony" rationale. *People v Reynold,* 20 Mich App 397; 174 NW2d 25 (1969).

"[W]e would rather not add further support to the paradoxical situation where only through the production of a witness can a court determine whether his testimony is cumulative but where his production is excused by deeming his testimony cumulative." *People v Hadley,* 67 Mich App 688, 691; 242 NW2d 32 (1976).

Rather, we apply the test suggested in *Hadley:* that the proof of guilt was so overwhelming aside from the taint of error, that a reasonable juror would find guilt beyond a reasonable doubt. *People v Swan,* 56 Mich App 22; 223 NW2d 346 (1974), *lv den* 395 Mich 810 (1975).

Affirmed.