PEOPLE v WHITE

Docket No. 43473. Submitted June 6, 1980, at Lans ng.—Decided December 2, 1980.

Lawrence White was convicted of first-degree criminal sexual conduct, Jackson Circuit Court, Russell E. Noble, J. Defendant appeals, alleging that blood type and secretor evidence which indicated that the defendant could not be excluded from the class of possible assailants was improperly admitted, that a prior statement of a witness was improperly referred to by the prosecutor in closing argument, and that the testimony of two police detectives was improper rebuttal. *Held:*

1. A ruling of the Court of Appeals since the trial of this case would mandate the exclusion of the blood type evidence because of the low probative value of such evidence when weighed against its ability to confuse, mislead, or otherwise improperly influence the jury. However, because such evidence has had widespread use and acceptance and because retroactive application of the rule against admission may have a significant adverse effect upon the administration of justice, the ruling will not be given retroactive effect.

2. The prior statement of the witness was adopted, at least in part, by the witness when he testified at trial. The prosecutor's later reference to the statement was not error.

3. The rebuttal testimony of the police detectives was not improper.

Affirmed.

M. J. KELLY, J., concurred, but wrote separately to qualify his prior opinion in *People v Sturdivant,* 91 Mich App 128; 283

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 20 Am Jur 2d, Courts §§ 233, 236.
Prospective or retroactive application of overruling decision. 65 ALR3d 504.
[2] Blood grouping tests. 46 ALR2d 1000.
[3] 75 Am Jur 2d, Trial § 218.
81 Am Jur 2d, Witnesses § 643.
[4] 29 Am Jur 2d, Evidence § 370.
30 Am Jur 2d, Evidence §§ 1104, 1147.
75 Am Jur 2d, Trial § 166.

NW2d 669 (1979), regarding the admissibility of blood type evidence. He would suggest that such evidence may be admissible where the evidence would place the defendant within a sufficiently defined population group. In this case the evidence should have been excluded had it been objected to, but its admission was harmless because the case was fully presented with adequate proofs and the jury was informed of the limited value of the evidence. Future cases in which the evidence more accurately points to a particular defendant or a significantly smaller class should be decided on a case by case basis.

OPINION OF THE COURT

1. CRIMINAL LAW — NEW RULE OF LAW — RETROACTIVE APPLICATION OF CASE PRECEDENT.

The factors to be taken into consideration in determining whether to give a new rule of law retroactive or only prospective application are (1) the purpose to be served by the new rule, (2) the extent of reliance upon the old rule, and (3) its effect on the administration of justice.

2. CRIMINAL LAW — EVIDENCE — BLOOD TYPE — NEW RULE OF LAW.

An opinion of the Court of Appeals which held that testimony regarding blood types used to place a defendant in a population group of possible perpetrators of a crime should be excluded because of its low probative value when weighed against its possible ability to confuse, mislead, or otherwise improperly influence the jury should not be given retroactive application where previously such testimony had been accepted and was in widespread use and where to give the new rule retroactive application may have a significant adverse effect upon the administration of justice.

3. WITNESSES — CRIMINAL LAW — PRIOR STATEMENT OF WITNESS.

A prosecutor properly referred, in closing argument, to a statement inculpating the defendant which a witness had made to the police where the witness in his trial testimony adopted the statement; the statement was therefore properly in the record and it was proper for the prosecutor to refer to the statement to the extent that it had been adopted by the witness.

CONCURRENCE BY M. J. KELLY, J.

4. CRIMINAL LAW — EVIDENCE — BLOOD TYPE — INCLUSION WITHIN POPULATION GROUP.

*Evidence of blood type which includes a defendant within a population group comprising 20% of all males requires a limit-*

*ing instruction to the jury and should be excluded if objected to; the admission of such evidence was harmless error, however, where it was not objected to, the case was fully presented with adequate proofs, and the prosecutor commented in closing argument on the limited value of the evidence.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward J. Grant,* Prosecuting Attorney, and *John C. Wildeboer,* Chief Appellate Attorney, for the people.

*P. E. Bennett,* Assistant State Appellate Defender, for defendant on appeal.

Before: DANHOF, C.J., and M. J. KELLY and G. R. CORSIGLIA,* JJ.

G. R. CORSIGLIA, J. Defendant-appellant was convicted on November 2, 1978, of first-degree criminal sexual conduct, contrary to MCL 750.520b(1)(f); MSA 28.788(2)(1)(f), after a four-day trial before a Jackson County Circuit Court jury. He was sentenced to 6 to 15 years imprisonment. Defendant appeals as of right.

At trial, the complaining witness testified that she was followed and verbally harrassed by a number of men in a car while walking home from a bar in Jackson, Michigan, in February of 1978. Terrified when one of the men got out of the car, she ran. Two men pursued her, and eventually she attempted to get into a friend's house. Unfortunately the home was locked, and the complainant was grabbed, physically assaulted and raped by one of the men. Because she was penetrated from behind while on her hands and knees in the snow, she did not get a good look at her attacker's face. However, based upon her recollection of his clothing, size, and certain other characteristics, while

---

* Circuit judge, sitting on the Court of Appeals by assignment.

riding with police a few blocks from the scene, and shortly after the assault, she identified the defendant. He was then taken into custody. The complainant was taken to the hospital by the police.

At trial, Frank Schehr, of the Michigan State Police Forensic Science Division, Serology Unit, testified that he analyzed the clothing of the complainant and the defendant, specimens taken from the complainant, and blood and saliva samples taken from the defendant. He testified that the complaining witness had type B blood and was a secreter and that the defendant had type A blood and was also a secreter. The specimens taken from the complainant's vagina showed type A secretions, according to his analysis, and such specimens were consistent with the defendant's blood type. In addition, they were also consistent with an AB secreter. Further testimony in a similar vein was given, all indicating that the defendant could not be excluded from the class of possible assailants based upon laboratory analysis.

The defendant did not deny that he was riding in the car that kept pace with the complainant in the early hours of the morning. One of the other occupants of the car, Fred Wheeler, stated that he did not recall telling a detective a few days after the incident that the defendant said that he was going to "fuck that white bitch" when he left the car. Wheeler finally stated that if the detective said that he (Wheeler) made the statement, then he must have said it, that his memory was better at the earlier date, and that he was not sure which of the two men who exited from the car made the statement.

The defendant took the stand to testify on his own behalf. He claimed that after he left the car he did not see the complainant or the other man

who got out. According to his testimony, he walked toward his mother's home, but decided to ask an acquaintance named Curtis, whom he met just before arriving at his mother's, for a ride to his sister's house. This person gave defendant the requested ride and left. When defendant found his sister was not home, he walked back six blocks toward his mother's home. He was taken into custody on the porch of a friend's house. Defendant claims he was stopping at the friend's house to ask her a question.

In rebuttal, the prosecution recalled a detective who had interviewed the defendant. The witness testified that the defendant did not mention the Curtis who offered him the ride to his sister's house or other similar details of the story the defendant told on the stand.

Another detective who observed the interview, and who had not been called by the prosecution prior to rebuttal, testified that he had not heard anything about the Curtis who offered the defendant a ride or the other new details regarding the defendant's activities on that day.

The jury apparently did not believe the defendant's version of the events, and he was convicted. He appeals, alleging several errors of law.

The trial in this case predates the decision of *People v Sturdivant,* 91 Mich App 128; 283 NW2d 669 (1979). Prior to *Sturdivant,* implicit approval had been given to blood type testimony such as that given in this case. See, *e.g., People v Newby,* 66 Mich App 400; 239 NW2d 387 (1976), *lv den* 397 Mich 867 (1976). Hence we are confronted with the issue of whether the rule set forth in *Sturdivant* ought to be given retroactive effect.

Three factors are generally taken into consideration in determining whether to give a new rule of

law retroactive or prospective application. As established in *Stovall v Denno,* 388 US 293; 87 S Ct 1967; 18 L Ed 2d 1199 (1967), a court should take into consideration: (1) the purpose to be served by the new rule; (2) the extent of reliance upon the old rule; and (3) its effect on the administration of justice. Accord, *People v Kamin,* 405 Mich 482; 275 NW2d 777 (1979), *Stewart v Stewart,* 91 Mich App 602; 283 NW2d 809 (1979).

As expounded in *Sturdivant,* the purpose of excluding blood type testimony relates to its low probative value when weighed against other considerations such as its possible ability to confuse, mislead, or otherwise improperly influence the jury. MRE 401, 403, *People v Sturdivant, supra.* Such a concern is dissimilar to a focus upon a right such as a defendant's right under the jury system to a properly requested instruction. Compare, *People v Kamin, supra,* 495.

Indication of the reliance upon the old rule regarding expert testimony on blood types is given by its widespread use and acceptance in similar cases. Indeed, in this case able defense counsel did not even object to its introduction. No prior indication was given to trial counsel of the imminent demise of the established rule. Compare, *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979).

Further, in this Court's opinion, retroactive application of the rule of *Sturdivant,* given the lack of prior precedent in similar cases or indication from higher courts to the trial bench, may have a significant adverse effect upon the administration of justice.

Consequently, we decline to give *Sturdivant* retroactive application. Since we so decide, this holding ought not to be construed as either an ap-

proval or disapproval of *Sturdivant* (except for Judge KELLY, the writer of *Sturdivant,* who still approves of it).

The defendant also argues that reversible error occurred when the trial judge allowed the prosecution to argue that the statement made by Mr. Wheeler was evidence of defendant's guilt. After a review of the record, it is apparent that Mr. Wheeler adopted his prior testimony, at least insofar as one of the two men who exited from the car made the statement. Consequently, the statement was properly of record and properly referred to in closing argument to the extent that it was adopted. *People v Couch,* 49 Mich App 69; 211 NW2d 250 (1973). We find no reversible error in the prosecution's references to Mr. Wheeler's testimony in his closing argument.

Likewise, the use of the detectives to rebut the story told by the defendant was not improper. Detective Smith had testified during the prosecution's case in chief. Detective Crawford merely supported his further testimony in rebuttal to the contrary testimony offered by the defendant. *People v Rosemary Gibson,* 71 Mich App 543; 248 NW2d 613 (1976).

Affirmed.

DANHOF, C.J., concurred.

M. J. KELLY, J. *(concurring).* I concur in the majority opinion, but take this opportunity to qualify my opinion in *People v Sturdivant,* 91 Mich App 128; 283 NW2d 669 (1979), concerning the admissibility of blood type evidence in criminal prosecutions.

Two cases in this Court have recently held blood type evidence admissible. In *People v Spencer,* 93 Mich App 605; 286 NW2d 879 (1979), a case de-

cided only three months after *Sturdivant,* the Court cited prior cases which admitted such evidence, "without comment", as the basis for its decision. In a more recent decision, *People v Horton,* 99 Mich App 40; 297 NW2d 857 (1980), the Court held:

> "Neither are we persuaded by the Sturdivant opinion's attempt to distinguish *[People v Gillespie,* 24 Ill App 3d 567; 321 NE2d 398 (1974)] from its own case which, like the case at bar, involved a showing that one of the population of 'nonsecretors' was connected with a crime. In *Gillespie,* evidence was admitted to show that a burglary was committed by a person having blood characteristics occurring in only 2.7% of the black population. The panel in *Sturdivant* considered that the great 'specificity' of the evidence in *Gillespie* distinguished it from the 80%/20% grouping shown by the secretor characteristic.
>
> *"If established data such as this is to be used at all, we believe that the statistics themselves are of no significance. As the population group connected with a crime grows larger, the probative force of that connection will decrease accordingly.* As observed in *[State v Thomas,* 78 Ariz 52; 275 P2d 408 (1954)]:
>
> " 'To exclude evidence merely because it tends to establish a possibility, rather than a probability, would produce curious results not heretofore thought of.' 78 Ariz 52, 64.
>
> "We conclude that deposits of blood and other identifiable bodily substances do not differ from other pieces of physical evidence such as clothing, hair styles, physical stature, or other observations that show possible connections between defendants and criminal acts. The weight of such evidence is for the jury's determination." (Emphasis added.)

The language emphasized above pinpoints the specific problem incurred in considering admission of this evidence. At what point does the percentage of the group in which a defendant is to be

included become significant enough so that the probative value of the evidence is not outweighed by its prejudicial effect? MRE 403. The *Horton* analysis is inconsistent on this point. The opinion first states that the size of the group in which a defendandt is lumped is "of no significance"; thereafter, that the probative value of such evidence decreases as the group becomes numerically larger. Where does the size of the group become large enough to preclude admission of the evidence?

Obviously, if the defendant is included in a class consisting of 2.7% of the population, it is more probative than if he is included in a class consisting of 20% of the population. This leads me to an altogether nonagonizing reappraisal of *Sturdivant.*

What is good about *Sturdivant* if it is followed is that it is understandable. It draws a bright line. It disallows so-called expert testimony which appears to me to be less scientific than polygraph[1] evidence and certainly devoid of the identifiable characteristics of fingerprints, fingernail, hair and even voice identification evidence. On the other hand, I should have been more precise in *Sturdivant* when describing the New York rule. I said: "we adhere to the view expressed in the New York cases[2] which accords inclusion testimony no probative value." *Sturdivant,* 132. The New York rule is not that hard and fast. The decisions leave the door ajar to admit blood type inclusion evidence in certain instances. In *Robinson,* the New York Court of Appeals did not find all blood type evi-

---

[1] Law enforcement officials use blood type evidence to rule out a suspect as they often do in the case of polygraph evidence. Accepting the results of the tests for purposes of determining innocence does not involve the same alchemy for establishing guilt.

[2] *People v Robinson,* 27 NY2d 864; 317 NYS2d 19; 265 NE2d 543 (1970), *People v Macedonio,* 42 NY2d 944; 397 NYS2d 1002; 366 NE2d 1355 (1977).

dence to be entirely without probative value;
rather, the evidence there was inadmissible "in
view of the large proportion of the general popula-
tion having blood of this [A] type". *Sturdivant,*
131. Thus, while not proscribing inclusionary blood
type evidence across the board the New York
court left the impression it outlawed future inclu-
sionary use.[3] At the very least it can be seen to
have required an exercise of discretion on the part
of the trial court to find some proportional dimen-
sion having relevancy. I hesitatingly suggest that
this could be a rule of future treatment we could
all abide.

Perhaps the probative value of a narrow per-
centage classification would outweigh the potential
for prejudice. In *Sturdivant,* 132, we distinguished
the decision in *People v Gillespie, supra,* "where
an expert witness testified that only 2.7% of the
Negro population had Type 'A' with a positive

---

[3] New York and *Sturdivant* are in each other's company. The
majority position is followed by *People v Horton, supra.* The following
states have found blood type evidence both relevant and admissible:
Alabama, *Dockery v State,* 269 Ala 564; 114 So 2d 394 (1959),
Arizona, *State v Thomas,* 78 Ariz 52; 275 P2d 408 (1954), Colorado,
*Roybal v People,* 177 Colo 144; 493 P2d 9 (1972), Connecticut, *State v
Walters,* 145 Conn 60; 138 A2d 786 (1958), Florida, *Williams v State,*
143 Fla 826; 197 So 562 (1940), Illinois, *People v Gillespie, supra,*
Indiana, *Conrad v State,* 262 Ind 446; 317 NE2d 789 (1974), Maryland,
*Shanks v State,* 185 Md 437; 45 A2d 85 (1945), Massachusetts,
*Commonwealth v DiMarzo,* 364 Mass 669; 308 NE2d 538 (1974), New
Jersey, *State v Beard,* 16 NJ 50; 106 A2d 265 (1954), New Mexico,
*State v Tipton,* 57 NM 681; 262 P2d 378 (1953), Ohio, *State v McGrew,*
25 Ohio App 2d 175; 268 NE2d 286 (1971), Oklahoma, *Hendricks v
State,* 296 P2d 205 (Okla Crim, 1956), Pennsylvania, *Commonwealth v
Mussoline,* 429 Pa 464; 240 A2d 549 (1968), Washington, *State v
Luoma,* 88 Wash 2d 28; 558 P2d 756 (1977), Wisconsin, *Watson v
State,* 64 Wis 2d 264; 219 NW2d 398 (1974).

In addition to New York, the only state previously finding blood
type evidence inadmissible based upon a claimed lack of relevancy is
*State v Peterson,* 219 NW2d 665 (Iowa, 1974). See also the implicit
recognition given to *Sturdivant* in *People v Sommerville,* 100 Mich
App 470; 299 NW2d 387 (1980), in which the Court found "any error
caused by the admission of the blood type evidence" to be harmless in
light of the totality of evidence implicating the defendant.

rheumatoid arthritis factor, as did defendant". The small group so identified in *Gillespie* differs markedly, however, from the 20% group of non-secretors[4] herein. The limited value of including defendant in a group comprising 20% of all males must necessarily be measured against the effect of such evidence on a jury. MRE 403. A limiting instruction is mandatory but the evidence perhaps assumes an aura of authenticity if presented through persons with scientific credentials in theoretical white smocks. In this case I think it should have been excluded if defendant objected to its admission. Since he did not and since the case was fully presented with adequate proofs, I find the error harmless, particularly in the light of the reference to this testimony occurring at the end of the prosecutor's rebuttal closing argument as follows:

"The essential testimony and important testimony from the fellow from the Crime Lab is in the analysis of the blood and then from the comparison with the semen. That doesn't say that the Defendant did it, but it also says—does not eliminate him. That is why the testimony is brought in from the lab. It's just like in a paternity suit. You can be eliminated by a blood test. Obviously, if the child does not have your type of blood or is not a combination that would come from your blood, that eliminates you. You could not be the father. It's the same type of situation here. He's not eliminated

---

[4] The cases cited in footnote 3 are all blood type cases. Two of the cases cited by the prosecutor, *Evans v State,* 235 Ga 396; 219 SE2d 725 (1975), and *State v Beard,* 16 NJ 50; 106 A2d 265 (1954), do not involve blood type evidence of the defendant. Neither the cases nor the writer offer any meaningful distinction between the secretion factor and the blood type. Further, in *People v Lindsey,* 84 Cal App 3d 851; 149 Cal Rptr 47 (1978), the court did not address the point at which such evidence becomes entirely irrelevant as inclusive of too large a segment of the population. In this case the people's expert testified on cross-examination that type "A" or "A/B" secreters would include approximately 50 per cent of the population.

but, obviously, this doesn't say he is the one. He is not the only one that has that blood type. That is the importance of the testimony from the lab man."

A criminal case in which proof beyond a reasonable doubt is required to convict, ought not to depend upon the prosecutor's ability to place the defendant within a group of 20% of all males. Inclusion of the defendant in this group provides almost no probative inculpatory evidence. At the same time, the danger of a jury giving undue weight to such evidence is apparent, and should be avoided. In cases of large groupings the benefit of including defendant in a class consisting of 20% of all males is clearly outweighed by the potential for adverse influence on the jury. Future cases, in which blood type and secreter evidence more accurately points to a particular defendant, or a significantly smaller class, must necessarily be decided on a case by case basis.